UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WESTERN UNION FINANCIAL SERVICES,
INC.,

              Plaintiff,

       -against-

METROPOLITAN CHECK CASHING, INC.,
BETHEX FEDERAL CREDIT UNION,
MIHUEL MOTA and SELENE MUNOZ,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 1:15-cv-08177 (PGG)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION BY THE NATIONAL CREDIT UNION ADMINISTRATION BOARD, AS CONSERVATOR OF DEFENDANT BETHEX FEDERAL CREDIT UNION

**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038-4982
212-806-5400
*Attorneys for National Credit Union
Administration Board, as Conservator of
Defendant Bethex Federal Credit Union*

*Of Counsel*:
Bruce H. Schneider
Michele L. Pahmer
Deana S. Stein

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

    Background ...........................................................................................................................2

    The Complaint .....................................................................................................................3

    The Motion to Dismiss and the Decision............................................................................4

    The Removal ........................................................................................................................5

ARGUMENT ...............................................................................................................................5

POINT I. RECONSIDERATION IS APPROPRATE HERE ........................................................5

    A. The Board May Seek Reconsideration Following Removal..........................................5

    B. Reconsideration is Warranted to Resolve Pure Issues of Law Not Addressed by
        the State Court...............................................................................................................6

POINT II. UPON RECONSIDERATION, BETHEX'S MOTION TO DISMISS
        SHOULD BE GRANTED IN ITS ENTIRETY .......................................................7

    A. Bethex was Entitled to Impose and Enforce its Statutory Lien Against the
        Metropolitan Accounts Under the FCUA ...................................................................7

    B.     No Genuine Factual Issues Exist Precluding Judgment in Bethex's
        Favor Under the FCUA ................................................................................................10

    C. Bethex's Additional Arguments Made to the State Court Provide Independent
        Grounds to Grant its Motion to Dismiss ....................................................................13

CONCLUSION.............................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Allied Mar., Inc. v. Rice Corp.,
    361 F. Supp. 2d 148 (S.D.N.Y. 2004).........................................................................6

In re Aylward,
    208 B.R. 565 (Bankr. M.D. Fla. 1997), vacated in part on other grounds, 228
    B.R. 755 (Bankr. M.D. Fla. 1997) ............................................................................8

Breedlove v. Cabou,
    296 F. Supp. 2d 253 (N.D.N.Y. 2003) ......................................................................5

In re Cabrera,
    No. 09-17809-AJC, 2009 WL 4666460 (Bankr. S.D. Fla. Dec. 8, 2009)............9, 11

In re Catalano,
    352 B.R. 361 (Bankr. W.D.N.Y. 2006) .....................................................................9

Matter of Clinton,
    1 Misc.3d 913(A) (N.Y. Sur., N.Y. Cnty. 2004) .....................................................13

In re Gifford,
    174 B.R. 231 (Bankr. W.D.Ky. 1994) .....................................................................11

Padilla v. Maersk Line, Ltd.,
    636 F. Supp. 2d 256 (S.D.N.Y. 2009)........................................................................6

In re Perez,
    440 B.R. 634 (Bankr. D. N.J. 2010) ........................................................................11

**Statutes & Regulations**

12 C.F.R. § 701.21 ............................................................................................4, 7, 10

12 C.F.R. § 701.39 .........................................................................................4, 7-10, 12

12 C.F.R. § 745.2(c) ...............................................................................................12

12 U.S.C. § 1752 .............................................................................................2, 7, 12

12 U.S.C. § 1757(11) .....................................................................................4, 7-8, 10

12 U.S.C. § 1759(a) ..................................................................................................8

12 U.S.C. § 1781(a) ..................................................................................................8

12 U.S.C. §1783(a) ..................................................................................................8

12 U.S.C § 1786(h) ................................................................................................5

12 U.S.C. § 1787(b) ...............................................................................................5

12 U.S.C. § 1789(a)(2) ...........................................................................................5

N.Y. Banking law § 9-g ..........................................................................................9

N.Y. Banking Law § 641 ...................................................................................10-11

N.Y. Banking Law § 651-a .................................................................................10-11

The National Credit Union Administration Board ("NCUA Board"), as conservator of Defendant Bethex Federal Credit Union ("Bethex") respectfully submits this memorandum of law in support of its motion, pursuant to Local Civil Rule 6.3, for reconsideration of the Decision and Order of the Supreme Court, Bronx County, dated June 30, 2015 (the "Decision"), denying Bethex's motion to dismiss the claims asserted against it the Complaint of Western Union Financial Services, Inc. ("Western Union") and all cross-claims interposed by Defendants Metropolitan Check Cashing, Inc. ("Metropolitan"), Miguel Mota, and Selene Munoz (collectively the "Metropolitan Defendants").[1]

## PRELIMINARY STATEMENT

This action arises out of Metropolitan's failure to remit funds owed to Western Union and on its default on certain obligations to Bethex, and presents the question of who, as between Western Union and Bethex, has priority under federal law to funds maintained by Metropolitan at Bethex.  Western Union alleges that it had a superior right to the funds that Metropolitan had on deposit with Bethex; however, Western Union's entire case rests – and therefore fails – on the misconception that Metropolitan maintained a trust account with Bethex designating that funds were to be held in trust for Western Union.  No such trust account exists as a matter of law and, as demonstrated herein, Bethex had a statutory lien under federal law on all Metropolitan's funds on deposit with it superior to other creditors, including Western Union.  Thus, when Metropolitan defaulted on certain lines of credit with Bethex, Bethex was within its rights to

---

[1]   A copy of the Decision was annexed to the Notice of Removal and assigned as Doc. No. 1-3. All citations to the Decision herein will reference the ECF-stamped page numbers (out of 72) assigned to Doc. No. 1-3.  The Decision also contains all of the papers submitted by the parties in the state court on this motion, including the Affidavit of Fredery Fernandez but not including the exhibits annexed thereto.  Therefore, the Fernandez affidavit and the exhibits are annexed here as Exhibit 1 to the accompanying Declaration of Bruce H. Schneider, dated December 7, 2015 ("Schneider Decl.").

1

enforce its lien against Metropolitan accounts at Bethex to set off Metropolitan's indebtedness. Because Bethex's setoff was entirely lawful, no claim exists by either Western Union or the Metropolitan Defendants as a result of such setoff, and Bethex's motion to dismiss those claims should have been granted.

**STATEMENT OF FACTS**

**Background**

Bethex is a not-for-profit Community Development Financial Institution organized pursuant to the Federal Credit Union Act, 12 U.S.C. § 1752 et seq. ("FCUA" or the "Act"), and offers services to eligible low to moderate income members throughout the City of New York. Metropolitan is a Bronx-based corporation operated by defendants Miguel Mota and Selene Munoz, which offers check cashing and money transmitting services.  Metropolitan was a member of Bethex (i.e., depositor) through several business accounts it had opened with Bethex in 2011, including an operating account, a checking account, and an ACH account used to make electronic payments.[2]  See Schneider Dec.  Ex. 1 ("Fernandez Aff.") ¶ 2.   None of these accounts was a trust account, and Metropolitan regularly transferred funds from the main account into the checking and ACH accounts.  Id. ¶¶ 3-6.

In addition, Metropolitan applied for three separate lines of credit with Bethex, secured by its shares and deposits for which it executed three separate Credit Line Account Advance Request and Security Agreements (the "Agreements").  Each of these Agreements specifically provided Bethex with a right of setoff with respect to any indebtedness incurred by Metropolitan:

> *We have the right to impress and enforce a statutory lien against*
> *Your shares and/or other funds on deposit with Us . . . and any*
> dividends and interest due or to become due to You from Us to the

---

[2]   Another operating account was closed in November 2012, before the events at issue.  See Fernandez Aff. ¶ 2.

2

> extent that You owe any unpaid balance on Your Account(s) and
> We may enforce our right to do so without further notice to You.
> Additionally, *You agree that we may set-off any mutual
> indebtedness on Your Account*.

Id., Ex. B at 4; Ex. C at. 4; Ex. D at 2.  (emphasis added).   The fourth line of credit was a one-day line of credit for which Metropolitan executed a One Day Secured Line of Credit Agreement for Check Casher Account Holders ("One-Day Agreement").  Id. ¶ 9, Ex. E.  A one-day line of credit was a short-term secured line of credit Bethex offered to its money transmitter and check casher members, such as Metropolitan, whereby those members could receive an advance of a percentage of funds from its daily deposits for immediate use as working capital, which it was required to pay off by the end of the following business day.  See id. Ex. E.

In the summer of 2013, Metropolitan defaulted on several one-day lines of credit issued to it by Bethex.  Id. ¶ 10.  When Metropolitan still failed to pay off the outstanding balance, in November 2013, Bethex exercised its right to set off the amounts owed using funds Metropolitan had in its business accounts, which, at the time, amounted to $62,994.20.  Id. ¶ 11; Exs. F-H.  Even after this setoff, Metropolitan still owes Bethex more than $200,000.  Id. ¶ 11.

**The Complaint**

As alleged in the Complaint, Western Union provides money transfer and money order services and utilized Metropolitan as an authorized agent for the sale of these services.  Compl., Doc. No. 1-1 ¶ 8.  Western Union commenced the instant action seeking payment from the Metropolitan Defendants for amounts collected by Metropolitan as agent, but not remitted to Western Union.  Id. ¶¶ 9, 15-16.  As to Bethex, Western Union claims entitlement to the funds in Metropolitan's accounts that Bethex used to set off the default on Metropolitan's lines of credit from Bethex.  Id. ¶ 13.

Western Union asserts nine causes of action against Bethex, all arising from Bethex having exercised its right to setoff amounts owed to it by Metropolitan against available funds in Metropolitan's accounts with Bethex.  Specifically, Western Union asserts claims for: (1) an accounting; (2) conversion; (3) bad faith; (4) unjust enrichment; (5) negligence; (6) money had and received; (7) tortious interference with contractual relations; (8) tortious interference with existing business relations; and (9) bailment. The Metropolitan Defendants have asserted two cross-claims against Bethex for conversion and indemnification.

**The Motion to Dismiss and the Decision**

On April 29, 2014, Bethex moved to dismiss the Complaint as well as the cross-claims asserted against it.  Bethex's motion was predicated on its contractual, common law, and federal statutory right to setoff, including its right under the FCUA, which expressly and unambiguously authorizes a federal credit union such as Bethex to impose and enforce a statutory lien against the funds in a member's accounts in an amount equal to the member's outstanding obligation to the credit union.  See 12 U.S.C. § 1757(11); 12 C.F.R. § 701.21.  Federal law expressly provides that such a lien is to be afforded "priority over other creditors."  12 C.F.R. § 701.39(b).  After Metropolitan defaulted on several one day lines of credit with Bethex, Bethex had full authority under federal law to immediately enforce that lien without having to obtain or record a court judgment, as it maintained a superior possessory right to the funds.  See 12 C.F.R. § 701.39(b) and (d)(3).

In its Decision, the state court judge held that two issues, characterized as mixed issues of law and fact, precluded judgment as a matter of law: i) whether the FCUA preempted state laws that might otherwise apply; and ii) whether Bethex's actual or imputed knowledge as to the relationship between Western Union and Metropolitan is relevant to the dispute.  Decision at 5.

4

Consequently, the court denied Bethex's motion.  Bethex timely filed a Notice of Appeal from the Decision.  See Notice of Appeal, Doc. No. 1-4.

**The Removal**

On September 16, 2015, the NCUA Board placed Bethex into conservatorship pursuant to its authority under 12 U.S.C § 1786(h) and appointed itself as conservator.  See Order of Conservatorship, Doc. No. 1-5.  By operation of law, the Board, acting in its capacity as conservator, succeeded to all rights, titles, powers, and privileges of the credit union and is authorized to conduct all business of the credit union.  12 U.S.C. § 1787(b)(2)(A), (B).  As a result of the conservatorship, and pursuant to 12 U.S.C. § 1789(a)(2), the Board timely removed this action on October 16, 2015 and sought a statutory stay of these proceedings pursuant to 12 U.S.C. § 1787(b)(12).  See Notice of Removal, Doc. No. 1.  The Board's application for a stay was granted on October 23, 2015.  Upon expiration of the stay, the Board now moves this Court for reconsideration of the Decision.

**ARGUMENT**

**POINT I.**

**RECONSIDERATION IS APPROPRIATE HERE**

**A.      The Board May Seek Reconsideration Following Removal**

In cases where, as here, removal occurs after certain proceedings in state court, all the state court's decisions are deemed adopted by the federal court as of the removal.  See Breedlove v. Cabou, 296 F. Supp. 2d 253, 264 (N.D.N.Y. 2003) (upon removal, the federal court treats earlier state court judgments "the same as other judgments entered by the district court and the parties would follow the ordinary rules regarding post-judgment remedies") (internal citation and quotations omitted).  This motion for reconsideration is timely and appropriate because it is being made promptly after the expiration of the stay sought upon removal of this action.  See id.

5

at 265 (state court order granting plaintiff's partial motion to dismiss was deemed "adopted by this district court immediately upon removal" and because a motion to reconsider was filed thirteen days following removal, same was timely and would be appropriately considered).

**B.      Reconsideration is Warranted to Resolve Pure Issues of Law Not Addressed by the State Court**

Under Local Rule 6.3, a party may bring a motion for reconsideration "where a court overlooks 'controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.'" Allied Mar., Inc. v. Rice Corp., 361 F. Supp. 2d 148, 149 (S.D.N.Y. 2004) (quoting Range Road Music, Inc. v. Music Sales Corp., 90 F.Supp.2d 390, 392 (S.D.N.Y. 2000)).   A motion for reconsideration may also be granted where "there is a need to correct a clear error or prevent manifest injustice." Padilla v. Maersk Line, Ltd., 636 F. Supp. 2d 256, 259 (S.D.N.Y. 2009) (citing Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)), opinion adopted, No. 07 CIV. 3638 RMB THK, 2012 WL 315641 (S.D.N.Y. Jan. 30, 2012) and aff'd, 721 F.3d 77 (2d Cir. 2013).

This motion for reconsideration is appropriate because the state court plainly erred in finding that facts existed that precluded judgment as a matter of law.   The state court framed the issues to be decided as pure legal issues of i) the scope of federal preemption under the FCUA; and ii) whether Bethex's knowledge of the relationship between Western Union and Metropolitan is relevant to its statutory lien under the FCUA in the absence of a valid trust agreement.  Having framed these pure issues of law, however, the Court failed to analyze the legal issues, citing the existence of factual issues.  Decision at 5.  Yet, neither of these legal issues involves a factual inquiry at all, and both can and should be resolved as a matter of law.

First, there are no disputed facts implicated by the FCUA's express preemption of inconsistent state law – including New York banking laws and the U.C.C. – regarding Bethex's right to impose and enforce a statutory lien.  See 12 C.F.R. § 701.21(b)(1)(iii); 12 U.S.C. § 1757(11); 12 C.F.R. § 701.39(b).  This is a pure question of law.  Second, there is also no issue of fact as to whether Bethex's knowledge of a purported trust relationship between Western Union and Metropolitan defeats its federal statutory rights.  This, too, is a pure legal issue.  The FCUA neither creates a "knowledge" exception to a federal credit union's entitlement to assert a statutory lien nor imposes a duty of inquiry on the credit union.  See 12 C.F.R. § 701.39; 12 U.S.C. § 1752(5).  Thus, the issue of Bethex's knowledge is entirely irrelevant.

In reaching its Decision, the state court judge failed to apply the unambiguous provisions of the FCUA that authorized Bethex's setoff, thus defeating all of the claims against it.   This Court should therefore grant Bethex's motion to correct the clear errors by the state court discussed herein that underlie its erroneous determination that Bethex was not entitled to judgment as a matter of law.

## POINT II.

## UPON RECONSIDERATION, BETHEX'S MOTION TO DISMISS SHOULD BE GRANTED IN ITS ENTIRETY

### A.    Bethex was Entitled to Impose and Enforce its Statutory Lien Against the Metropolitan Accounts Under the FCUA

Bethex is governed by the FCUA.  The FCUA was enacted to make credit available and promote thrift through a national system of nonprofit, cooperative credit unions.  See 12 U.S.C. § 1752(1).  Federal credit unions, which are chartered by the NCUA Board and vested with all powers granted by the FCUA, are member-owned institutions in which members obtain ownership rights through the issuance of "shares."  See 12 U.S.C.

§ 1759(a).  The NCUA Board insures the member accounts of all federally chartered credit

unions through the National Credit Union Share Insurance Fund.  12 U.S.C. §§ 1781(a),

1783(a).  In order to protect the fiscal stability of these government-backed non-profit

organizations, the FCUA grants federally chartered credit unions, such as Bethex, a

statutory lien on <u>all</u> shares on deposit in credit union accounts.  <u>See</u> 12 U.S.C. § 1757(11)

(granting a federal credit union the power "to impress and enforce a lien upon the shares and

dividends of any member, to the extent of any loan made to him and any dues or charges

payable to him").  This statutory lien is essentially a lien on all the funds in a member's

account(s), to the full extent of a member's outstanding financial obligation to a credit

union.  <u>See</u> 12 C.F.R. § 701.39(a)(5) (defining "statutory lien" as "the right granted by . . .

12 U.S.C. § 1757(11), to a federal credit union to establish a right in or claim to a member's

shares and dividends equal to the amount of that member's outstanding financial obligation

to the credit union, as that amount varies from time to time.").[3]  The Act makes no

distinction based on the type of indebtedness subject to the lien and applies to any financial

obligation incurred by the member, including through the issuance of loans or lines of

credit.  <u>See id.</u>  Bethex's authority to enforce a statutory lien under the FCUA is governed solely

by federal law.  <u>See</u> <u>In re Aylward</u>, 208 B.R. 565, 567 (Bankr. M.D. Fla. 1997) (holding that

"where the statutory lien is created by [f]ederal law, [f]ederal law governs"), <u>vacated in part</u>

<u>on other grounds</u>, 228 B.R. 755 (Bankr. M.D. Fla. 1997).

   The only requirement set forth in the Act and the NCUA Board's implementing

regulation to "impress a statutory lien on a member's account(s)" is that the federal credit

---

[3] "Member" means "any member who is primarily, secondarily or otherwise responsible for
an outstanding financial obligation to the credit union, including without limitation an
obligor, maker, co-maker, guarantor, co-signor, endorser, surety or accommodation party[.]"
12 C.F.R. § 701.39(a)(3).

union give notice to the member of such a right in either a member's account agreement or loan documents or the federal credit union's by-laws.  12 C.F.R. § 701.39(c).  Here, Bethex gave notice to Metropolitan in each of the three separate Agreements governing its accounts of its "right to impress and enforce a statutory lien against [its] shares and/or other funds on deposit with [Bethex]," and thus Bethex's statutory lien was perfected at that time.  See Fernandez Aff. Exs. B at 4, C at 4, D at 2; cf., In re Cabrera, No. 09-17809-AJC, 2009 WL 4666460, at *3 (Bankr. S.D. Fla. Dec. 8, 2009) (explaining that credit union's lien was perfected under federal law by virtue of its insertion in the Note of its intent to impress a lien on all permissible accounts of the Debtor).[4]

Any time a member "fails to satisfy an outstanding financial obligation due and payable to the credit union," the credit union "may enforce its statutory lien against a member's account(s) by debiting funds in the account and applying them to the extent of any of the member's outstanding financial obligations to the credit union."[5]  12 C.F.R. § 701.39(d)(1) and (2).  No additional steps are required – the credit union does not have to "obtain a court judgment on the member's debt, [or] exercise the equitable right of setoff, prior to enforcing its statutory lien against the member's account."  Id. § 701.39(d)(3). Accordingly, when Metropolitan defaulted on several one-day lines of credit totaling $334,052, and failed to pay off the outstanding debt, Bethex had the right to enforce its

---

[4]    The Agreements gave Bethex a contractual right to setoff as well.  Moreover, although not controlling in this case, New York Banking Law § 9-g and common law also recognize that banking institutions "have a long established right of setoff where a borrower is indebted to the institution and also has money on deposit with the institution."  In re Catalano, 352 B.R. 361, 362 (Bankr. W.D.N.Y. 2006).

[5]    The only limitation imposed on enforcement of a lien is as otherwise provided for by federal law, such as an IRS levy.  See 12 C.F.R. § 701.39 (d)(1).

perfected statutory lien by debiting the $62,994.20 remaining in Metropolitan's general business accounts.

Critically, the NCUA Board's implementing regulation expressly provides that a "statutory lien gives the federal credit union priority over other creditors when claims are asserted against member's account(s)." 12 C.F.R. § 701.39(b).  The FCUA provision states, without limitation, that a federal credit union may impress and enforce the statutory lien "to the extent of any loan made to [a member] and any dues or charges payable." 12 U.S.C. § 1757(11).  Thus, Bethex's enforcement of its statutory lien was superior to any purported right to the funds alleged by Western Union.

**B.      No Genuine Factual Issues Exist Precluding Judgment in Bethex's Favor Under the FCUA**

Neither of the two purported factual issues identified in the Decision overcome Bethex's entitlement to judgment as a matter of law.  First, contrary to the state court's determination, there are no issues of fact precluding summary judgment with respect to whether the FCUA preempts conflicting state law, including New York banking laws and the U.C.C.; that question raises a pure issue of law.  See Decision at 5 (referencing N.Y. Banking Law §§ 641 and 651-a and identifying as mixed issue of law and fact, asking "[w]as FCUA intended to preempt all state law protecting these specific transactions?").  The FCUA expressly and unambiguously "preempts any state law purporting to limit or affect . . . [t]he "imposition and enforcement of liens on the shares of borrowers." 12 C.F.R. § 701.21(b)(1)(iii)(E).  The FCUA also preempts state laws that purport to limit the "type or amount of security and the relation of the value of the security to the amount of the loan." Id. § 701.21(b)(1)(iii)(C).  Given this clear statement of preemption, courts have recognized

that the FCUA preempts conflicting state laws, including the U.C.C.[6]  See In re Perez, 440

B.R. 634, 640-41 (Bankr. D. N.J. 2010) (stating that FCUA "preempts state law, namely any

U.C.C. provisions that conflict with the Act"); In re Gifford, 174 B.R. 231, 233 (Bankr. W.D.

Ky. 1994) (holding that the FCUA displaces contrary Article 9 U.C.C. provisions); In re Cabrera,

2009 WL 4666460, at *3 (same).

In any event, these two sections of New York Banking Law relied on by Western

Union and referred to in the Decision have no application to Bethex as a matter of law.

Specifically, Section 641, which governs the licensing requirements for money transmitters,

plainly states that "nothing in this article shall apply to . . . [a] federal credit union."

New York Banking Law § 651-a is likewise inapplicable.  That statute governs the

duties imposed by law on agents of remitters (such as Metropolitan) to report the sale of any

New York instruments or traveler's checks and remit the face amount of those instruments

to their licensee within a specific period of time.  N.Y. Banking Law § 651-a.  The statute

does not in any way regulate federal credit unions (nor could it) and the particular section

quoted by Western Union below has nothing to do with the obligations of a federal credit

union but instead specifies how an agent such as Metropolitan may satisfy its obligation to

remit funds to a licensee such as Western Union.  The mere mention of a federal credit

union as an appropriate depository institution in this context does not and cannot affect the

rights and obligations of federal credit unions.  Nothing in either of these state law

---

[6]    In its opposition papers below, the Metropolitan Defendants asserted that Western Union had
a superior right to the funds in its accounts under the U.C.C.  However, as noted above,
the FCUA preempts any U.C.C. provision inconsistent with its terms.  Although not relevant
to the disposition of Bethex's motion, it should be noted that the U.C.C. filing on which the
Metropolitan Defendants rely does not identify Western Union as the secured party and it is
dated in December 2013 – a month after Bethex had enforced its statutory lien.  See
Decision at 27-29.

provisions could impair Bethex's rights with respect to its statutory lien under the FCUA, and the attempt by Western Union and the Metropolitan Defendants to manufacture issues of fact do not overcome Bethex's right to enforce its lien through setoff.

The purported second issue of fact identified by the Decision – whether Bethex's knowledge of a purported trust relationship between Western Union and Metropolitan is relevant – also presents a pure question of law that does not preclude judgment in Bethex's favor.  See Decision at 5 ("Is the actual or imputed knowledge of Bethex relevant in deciding the validity of Western Union['s] claim?").  Initially, the FCUA does not create an exception to a credit union's ability to impress a statutory lien based on its "knowledge" of the purported nature or purpose of the funds deposited into an account, nor does it impose a duty on the credit union to inquire as to the purpose of each of its members' accounts.  Rather, the lien is automatically imposed on all accounts in the name of that member.  See 12 C.F.R. § 701.39; 12 U.S.C. § 1752(5).

Moreover, none of Metropolitan's accounts with Bethex was a valid trust account as a matter of federal law.  To establish a trust account with a federal credit union, the settlor and beneficiary of the account must be specifically named in the credit union's account records, and the account signature card be executed by the trustee indicating his fiduciary capacity.  See 12 C.F.R. § 745.2(c).[7]  A federal credit union's records are conclusive evidence of the type of account created.  See 12 C.F.R. § 745.2(c)(1) (account records of credit union shall be "conclusive as to the existence of any relationship pursuant to which

---

[7]   New York law is to the same effect;  to create an "in trust for" bank account, the depositor must name himself as trustee for another person.  See N.Y. Est. Powers & Trusts Law § 7-5.1(d) (defining "trust account" as including "a savings, share, certificate or deposit account in a financial institution established by a depositor describing himself as trustee for another, other than a depositor describing himself as acting under a will, trust instrument or other instrument, court order or decree.").

the funds in the account are deposited," including whether a trust, agent, custodian, or executor relationship existed); cf. Matter of Clinton, 1 Misc.3d 913(A) (N.Y. Sur., N.Y. Cnty. 2004) ("the best evidence" that a trust account was created "would be a signature card signed by the decedent").  Here, the absence of a trust account is indisputable, as the account signature cards conclusively establish that Metropolitan opened general business accounts, not trust accounts.  Although the signature cards contain sections for a member to designate the account as a trust account and to identify a beneficiary, none of the Metropolitan accounts was designated as a trust account or named any beneficiary.  To the contrary, those signature cards identified Metropolitan as the "Member/Owner" of the accounts and Miguel Mota and Selene Munoz as "Joint Owners."  Fernandez Aff., Ex. A.[8]

For all of these reasons, there are no issues of fact that preclude judgment as a matter of law.  Because the FCUA provided Bethex with a statutory lien that was superior to the rights of Western Union, it is entitled, as a matter of law, to dismissal of the complaint and cross-claims against it.

## C.    Bethex's Additional Arguments Made to the State Court Provide Independent Grounds to Grant its Motion to Dismiss

The non-existence of a trust account established for the benefit of Western Union, coupled with the lawful decision by Bethex to exercise its rights and apply the funds in Metropolitan's accounts to offset the debts Metropolitan owed it, defeat all of Western Union's

---

[8]    Although the issue of whether or not an account is a trust account presents an issue of law, it is telling that neither Western Union nor the Metropolitan Defendants actually assert that valid trust accounts were created by Metropolitan – an assertion that would be belied by the uncontroverted account documents.  Instead, they cautiously argue that  "Bethex knew or should have known" of the alleged trust relationship between Western Union and Metropolitan. Decision at 5.  As discussed above,  the plain terms of the FCUA provide a statutory lien on all of a member's accounts and provides no limitation on these statutory rights based on the kind of imputed knowledge theory argued here.

claims against Bethex, as well as the cross-claims by the Metropolitan Defendants.  Simply put,

there was nothing improper, unlawful, or unfair about Bethex having exercised the remedies

available to it in an attempt to recover some of the monies the Metropolitan Defendants owed it.

Accordingly, the claims asserted by Western Union and the Metropolitan Defendants are also

substantively defective, as discussed in greater detail in Bethex's underlying motion papers.  <u>See</u>

Decision at 46-49, 64-71.

**CONCLUSION**

For the reasons stated above, this Court should grant reconsideration and, upon

reconsideration, should dismiss all claims and cross-claims asserted against Bethex for failure to

state a claim.

Dated:      New York,  New York
            December 7, 2015

**STROOCK & STROOCK & LAVAN LLP**

By:    <u>/s/_____</u>
       Bruce H. Schneider
       Michele L. Pahmer
       Deana S. Stein
       180 Maiden Lane
       New York, NY 10038-4982
       (212) 806-5400

*Attorneys for National Credit Union Administration
Board, as Conservator of Defendant Bethex Federal
Credit Union*