UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WESTERN UNION FINANCIAL SERVICES, INC.,


                                    Plaintiff,

-against-                                                    INDEX NO.1:15-cv-08177(PGG)

METROPOLITAN CHECK CASHING, INC.,              CERTIFICATION OF COUNSEL
BETHEX FEDERAL CREDIT UNION,                   IN OPPOSITION TO DEFENDANT
MIGUEL MOTA and SELENE MUNOZ,                  BETHEX'S MOTION FOR
                                               RECONSIDERATION
                                    Defendants.
-----------------------------------------------------------------X

     David J. Finkler, Esq., an attorney at law duly licensed to practice law before the subject

Court certifies under penalty of perjury as follows:

     1.  I am counsel to the Plaintiff Western Union Financial Services, Inc. and as such am

personally familiar with the matter before the Court and previously before the Supreme Court of

the State of New York, County of Bronx.

     2.  I annex hereto as Exhibit "A" a copy of the decision of Judge Barone, Judge of the

Supreme Court, Bronx County, New York, dated June 30, 2015.

     3.  I annex hereto as Exhibit "B" a copy of the Affidavit in Opposition to the Bethex State

Court Motion to Dismiss filed by co-Defendant Metropolitan Check Cashing, Inc.'s President

Miguel Mota with exhibits.

     4.  I annex hereto as Exhibit "C" a copy of the Plaintiff's Affirmation in Opposition to the

Bethex motion to dismiss before the Supreme Court of the State of New York, Bronx County,

along with the exhibits thereto.

Dated:  January 20, 2016

David J. Finkler, Esq.(df9320)
LAW OFFICES OF DAVID J. FINKLER, P.C.

Attorneys for Plaintiff
266 Harristown Road, Suite 203
Glen Rock, N.J. 07452
(201) 689-0001
(201) 689-1311 (fax)
dfinkler.lawdjf@verizon.net


New York Address:
9 East 38th Street, 3rd Floor
New York, N.Y. 10016
(212) 675-3520

# EXHIBIT "A"

FILED  Jul 29 2015 Bronx County Clerk
    FILED  Jul 16 2015 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX: IA-12
-----------------------------------------------------------------------x
Western Union Financial Services, Inc.,

                          Plaintiff(s),

              - against -                        INDEX. NO.: 300710/14

Metropolitan Check Cashing, Inc., Bethex Federal
Credit Union, Mihuel Mota and Selene Munoz,

                          Defendant(s).
-----------------------------------------------------------------------x
HON. JOHN A. BARONE:

        This motion is filed by defendant Bethex Federal Credit Union (Bethex) to dismiss the
verified complaint of Western Union Financial Service (Western Union) and the cross-claims of
co-defendant Metropolitan Check Cashing (Metropolitan). Bethex made its motion pursuant to
CPLR 3211(a)(7). Western Union's complaint alleges, as it relates to Bethex, that it wrongfully
converted funds deposited by Metropolitan with Bethex. Although, not set forth in its initial
verified complaint (which misidentifies Metropolitan as "plaintiff"), Western Union is a
subsidiary of the Western Union Company. Its corporate purpose is to provide consumer
money transfer services to individuals and businesses. Metropolitan is a New York State
Corporation which provides check cashing services to its customers. Bethex is a Federally
charted credit union doing business in New York State, primarily in Bronx County.

        Metropolitan contracted with Bethex to accept cash payments from Western Union's
consumer customers to deposit those payments in a designated bank account and remit those
payments to Western Union. Metropolitan opened accounts with Bethex to make check and
cash deposits, issue checks and wire transfers. Bethex alleges that Metropolitan defaulted on
several lines of credit with Bethex. Bethex then exercised its right of set off to attach

                                    1

                                                        300710/14

FILED  Jul 29 2015 Bronx County Clerk

FILED  Jul 16 2015 Bronx County Clerk

approximately $211,000.00 from Metropolitan to Bethex accounts to reduce Metropolitan's default. Western Union asserts that this money was not the property of Metropolitan but belonged to Western Union and represented payments by Western Union customers for money Western Union transferred on their behalf. As such, Bethex had no right to set off these funds against Metropolitan default of accounts. Bethex then filed this motion to dismiss the complaint and counter-claim, listed against.

Pursuant to CPLR 3211 [a], "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that; ... 7. the pleading fails to state a cause of action." On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction. *See* CPLR 3026. "We accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory. ... In assessing a motion under CPLR 3211 [a] [7], however, a court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint ... and 'the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one.'" *Leon v. Martinez*, 84 NY2d 83, 87-88 [1994]. Although the narrow question for review is whether the complaint states a cognizable cause of action, the allegations contained therein cannot be vague and conclusory. *See Lynch v. Upper Crust, Inc.*, 294 AD2d 237 [1st Dept 2002].

Bethex argument set forth in its motion papers is straight forward. Its agreement with Metropolitan clearly establishes its right to set off. Western Union allegations to the contrary notwithstanding, there is nothing to indicate that Metropolitan's account were trust accounts. Western Union does not identify which accounts it alleges to be trust accounts. Western Union presents no evidence of any acknowledgment by any of the parties that the Metropolitan accounts were intended to be treated as trust accounts. Therefor none of the causes of actions asserted by Western Union are sustainable. Similarly, the counterclaims asserted by Metropolitan are likewise not sustainable and must be dismissed.

2                               300710/14

FILED  Jul 29 2015 Bronx County Clerk

FILED  Jul 16 2015 Bronx County Clerk

In oppositions, Western Union and Metropolitan state that issues of fact are raised by the complaint and cross-claim sufficient to require additional discovery.

In the first place, Western Union asserts that there is agreement between Metropolitan and Western Union that they had created a trust relationship. The issue then arises whether Bethex knew or should have known of this trust relationship.

Secondly, Western Union states that Bethex must be charged with knowledge of New York Banking Law §§641 and 651-a. Thus Bethex should have realized that the check cashing business created by Metropolitan necessitated that the funds deposited by Western Union customers created a trust relationship with Western Union.

Metropolitan asserts that Bethex's right to set off was limited to Metropolitan $100,000.00 certificated of deposit and did not apply to the bank accounts attached by Bethex.

In reply, Bethex states that its rights under the Federal Credit Union Act (FCUA) create a statutory lien which is superior to the claims of Western Union. Western Union must seek remedy against Metropolitan only. Its reliance on the New York State Banking Law is misplaced. FCUA preempts state law and gives a superior right to Bethex.

The argument here makes it clear to the court that mixed issues of law and fact are involved which render the dispute herein difficult to resolve at this stage of the litigation. Specifically, Western Union had advanced funds to payees nationwide based on funds deposited by individual customers into Metropolitan. Was FCUA intended to preempt all state law protecting these specific transactions? Is the actual or imputed knowledge of Bethex relevant in deciding the validity of Western Union claim?

A record must be developed to resolve questions of fact. *See Rimberg & Associates, P.C.*

3

FILED  Jul 29 2015 Bronx County Clerk

FILED  Jul 16 2015 Bronx County Clerk

*v. Jamaica Chamber of Commerce, Inc.,* 40 AD3d 1066 [2nd Dept 2007]; *see also Cabibi v. Lundrigan,* 7 AD3d 556 [2nd Dept 2004]. As discovery has not yet taken place, the application is premature. Pursuant to CPLR 3211 [d], "[s]hould it appear from affidavits submitted in opposition to a motion made under subdivision [a] or [b] that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion, allowing a party to assert the objection in its responsive pleading, if any, or may order a continuance to permit further affidavits to be obtained or disclosure to be had and may make such other order as may be just." *See Cantor v. Levine,* 115 AD2d 453 [2nd Dept 1985] (court has broad discretion to grant plaintiff leave to conduct discovery respecting facts necessary to oppose defendant's motion to dismiss).

Conclusion

    1) The motion of Bethex to dismiss the complaint is denied without prejudice and with leave to move for summary judgment at the close of discovery.

    2) Defendant has 20 days after the service of a copy of the instant order with notice of entry to serve and file its answer.

This constitutes the decision and order of this Court.

Date: 6/30/15

                                John A. Barone, JSC

4

300710/14

FILED  Jul 29 2015 Bronx County Clerk

**ATTORNEY'S CERTIFICATION**

STATE OF NEW YORK, COUNTY OF

The undersigned, an attorney admitted to practice in the State of New York, does hereby certify, pursuant to Section 2105 CPLR, that I have compared the within

with the original and have found it to be a true and complete copy thereof.

Dated: _____   2000

Type or Print Name Below Signature

---

Sir(s):

**NOTICE OF ENTRY OR SETTLEMENT**
(Check and complete appropriate box and section)

**NOTICE OF ENTRY**

PLEASE TAKE NOTICE that a __ form of judgment of which the within is a true (certified) copy

was duly entered in the within named court
on _____

**NOTICE OF SETTLEMENT**

will be presented for settlement to the Hon. _____ one of the judges of the within named court at the Supreme Courthouse at _____

on _____
at      9:30      o'clock      A.M.

Dated: _____

Yours, etc.

LAW OFFICES OF DAVID J. FINKLER, P.C.
266 HARRISTOWN ROAD STE 203
GLEN ROCK, NJ 07452
Attorney(s) for _____ PLAINTIFF

David J. Finkler, Esq.

---

SUPREME COURT OF NEW YORK
COUNTY OF BRONX

WESTERN UNION FINANCIAL SERVICES, INC.

Plaintiff,

-against-

METROPOLITAN CHECK CASHING, INC.,
BETHEX FEDERAL CREDIT UNION, MIGUEL
MOTA AND SELENE MUNOZ,

Defendants.

**NOTICE OF ENTRY**

LAW OFFICES OF DAVID J. FINKLER, P.C.

Attorney(s)   PLAINTIFF

266 HARRISTOWN RD, STE. 203
GLEN ROCK, NJ 07452

(201) 689-0001      FAX: (201) 689-1311

The undersigned attorney certifies pursuant to 22 NYCRR 130-1.1 that to the best of his/her knowledge, information and belief the annexed document is not frivolous.

---

within

on _____   on      2000
at _____   at      o'clock      M.

Attorney(s) for

by:

**AFFIDAVIT OF SERVICE BY MAIL**

STATE OF NEW JERSEY
COUNTY OF BERGEN          : ss.:

I Veronica Guevara, being sworn, says:
I am not a party to this action; I am over 18 years of age;
I reside at Paterson, N.J.
On  7/23/2015  I served a copy of the within   Notice of
Entry   upon  Allyson M. Bucinski, Esq., 180 Maiden Lane,
New York, NY 10038 and Joseph R. Curro, Esq., 35 Grassy
Sprain Road, Suite 400, Yonkers, NY 10710   by depositing
a true copy of the same enclosed in a postpaid, properly
addressed wrapper, in an official depository under the
exclusive care and custody of the United States Postal
Service within the State of New Jersey;

Sworn to before me

This  23rd  day of July, 2015.

Type or Print Name Below Signature
Veronica Guevara

DAVID J. FINKLER
NOTARY PUBLIC, STATE OF NEW JERSEY
No. 50-46505
Qualified in Bergen County
Commission Expires May 7, 20/9

# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------------x
WESTERN UNION FINANCIAL SERVICES, INC.,                    Index No.: 300710-14

                                             Plaintiff,              **AFFIDAVIT IN**
-against-                                                           **OPPOSITION**

METROPOLITAN CHECK CASHING, INC., BETHEX
FEDERAL CREDIT UNION, MIHUEL MOTA and
SELENE MUNOZ,

                                             Defendants.
-----------------------------------------------------------------------x

STATE OF NEW YORK            )
                             )ss.:
COUNTY OF WESTCHESTER        )

        **Miguel Mota,** (sued herein as Mihuel Mota) being duly sworn and deposed

states the following:

        1.      I am one of the defendants in this action and the president of

defendant Metropolitan Check Cashing, Inc. ("Metropolitan").   I make this

affidavit in opposition to defendant, Bethex Federal Credit Union's ("Bethex")

motion to dismiss.

        2.      Defendant Metropolitan was a New York State licensed check casher

which maintained its operating accounts with Bethex.

        3.      Bethex was fully aware that the monies held in Metropolitan's bank

accounts belonged in part to third party vendors.  Bethex knew that these accounts

had perfected security interest liens attached to the accounts by third party

vendors, including plaintiff.

1

The bank account number 202421 was the general business deposit account. The bank account number 202424 was the Automated Clearing House ("ACH") account for forwarding money to Metropolitan's automated third party vendors, such as plaintiff. Bethex would transfer funds from bank account number 202421 into bank account number 202424 for these ACH transfers.

4.   In this case, Metropolitan's customers would purchase Western Union money orders or request wire transfers ("Western Union Funds"). These Western Union Funds would be deposited into Metropolitan's accounts and then ACH transferred to plaintiff. This procedure, knowledge of the source of these funds and ownership of funds was known by Bethex.

Bethex is very familiar with the business of check cashers and remitters; see Exhibit "1" attached hereto (Bethex services more than 100 remitters) and is itself involved in the business of a check casher; see Exhibit "2" attached hereto.

5.   Bethex also confirmed its knowledge of this usual and customary procedure by check cashers in general and specifically as to Metropolitan by letter dated June 10, 2013; see Exhibit "3" attached hereto. This procedure is demonstrated as shown on the bank statements attached hereto as Exhibit "4" highlighted sections.

6.   I first became aware that Bethex was taking the Western Union Funds out of Metropolitan's bank accounts by way of set-off by receipt of a letter mailed to Metropolitan on November 13, 2013; see Exhibit "5" attached hereto.

7.   Plaintiff was a secured party and had a perfected lien on Metropolitan's bank accounts; see Exhibit "6" attached hereto.

8.    Bethex, in fact knowingly converted funds belonging to plaintiff when it used those funds to set-off loan amounts allegedly due from Metropolitan to Bethex.

**WHEREFORE**, it is respectfully requested that defendant Bethex's motion be denied in its entirety.

Miguel Mota

Sworn to before me this
12th day of June 2014

Notary Public

JOSEPH R. CURTO
Notary Public, State of New York
No. 4784139
Qualified in Westchester County
Commission Expires May 31, 20_15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------------------x

WESTERN UNION FINANCIAL SERVICES, INC.,  Index No.: 300710-14

           Plaintiff,   **AFFIRMATION IN**
                  **OPPOSITION**
-against-

METROPOLITAN CHECK CASHING, INC., BETHEX
FEDERAL CREDIT UNION, MIHUEL MOTA and
SELENE MUNOZ,
          Defendants.

------------------------------------------------------------------------x

STATE OF NEW YORK   )
            )ss.:
COUNTY OF WESTCHESTER )

  **Joseph R. Curto** hereby affirms the following to be true under the pains and penalty of perjury:

  1.  I am a member of the firm Veneruso, Curto, Schwartz & Curto, LLP attorneys for defendants, Metropolitan Check Cashing, Inc. ("Metropolitan"), Miguel Mota (s/h/a Mihuel Mota) and Selene Munoz. I make this affirmation in opposition to defendant, Bethex Federal Credit Union, ("Bethex") motion to dismiss.

<u>STANDARD FOR MOTION TO DISMISS</u>

  2.  On a motion to dismiss a cause of action pursuant to CPLR §3211 the case law is settled. The pleading is to be afforded a liberal construction. The reviewing court must accept the facts as alleged in the complaint as true, affording plaintiff the benefit of every possible favorable inference and determine only

1

whether the facts as alleged fit within any cognitive legal theory, *Leon v. Martinez*, 84 NY 2d 83 (1994).

## FACTS PRESENTED

3.      Based upon Miguel Mota's affidavit Bethex clearly:

a.      Established the Metropolitan bank accounts with the knowledge that third party vendor's funds would be deposited into those bank accounts and then ACH transferred to third party vendors.  In fact, Bethex opened bank accounts numbers 202421 and 202424 for that particular purpose.

b.      Knew specifically that plaintiff's funds were being held into those two accounts; and

c.      Knew or should have known that plaintiff had a perfected security interest in all Metropolitan's accounts (Exhibit "6").

## RELEVANT LEGAL ISSUE

4.      The relevant legal issue is whether Bethex converted funds from Metropolitan's bank accounts (i) knowing those funds belonged to other third party vendors, such as plaintiff and (ii)  knowing that the funds in these bank accounts were subject to the perfected security interest  of plaintiff.

5.      Although any bank generally has the right of set-off, under New York Banking Law Section 9-g and in this case the Federal Credit Union Act, that set-off right is subject to the interests of secured creditors.

When Bethex ignored plaintiff's secured interest in Metropolitan's bank accounts and took the funds for its own benefit it converted plaintiff's money. Bethex must be liable to indemnify Metropolitan, Miguel Mota and Selene Munoz for any loss they may sustain due to Bethex's conversion.

6.     The priority of security interest in Deposit Accounts is governed by Uniform Commercial Code §9-327(a):

> *"A security interest held by a secured party having control*
> *of the deposit account under Section 9-104 has priority over*
> *a conflicting security interest held by a secured party that*
> *does not have control."*

Even assuming Bethex had "control" of Metropolitan's bank accounts, Bethex was not a "secured party" as required by Uniform Commercial Code §9-104(1) and defined by Uniform Commercial Code §9-102(72)(A). Because Bethex did not have a security interest "created or provided for under a security agreement".

Each of Bethex's alleged security agreements, see Exhibits "B", "C" and "D" attached to Bethex's motion papers, specifically describe the collateral as "Share O" which upon information and belief was a $100,000.00 certificate of deposit made by Metropolitan <u>not</u> the bank accounts in question.

Therefore, Bethex would not have a secured interest because it is not a "<u>secured party</u>".

7.     Since Bethex was not a secured party the perfected security interest of plaintiff prevails.   Bethex knowingly set-off funds which were subject to plaintiff's security interest. Therefore, Bethex must indemnify Metropolitan and its principals for its conversion of those funds.

**WHEREFORE**, it is respectfully requested that defendant Bethex's motion be denied in its entirety.

Dated:  Yonkers, New York
      June 16, 2014

Joseph R. Curto

Exhibit 1

# Bethex Federal Credit Union | Remitters




A Window
of Opportunity

| Home | About Us | News and Updates | Products | Loans & Credit | Membership | Forms | Joy's Blog | Conta |

## Remitters



Throughout the years we have heard stories about how family and friends back home need money, and how much it costs to send it. With this in mind, in 2005 Bethex FCU opened its doors to Money Remitters. This followed the decision by many banks to divest themselves of that business, considering it unprofitable. By our offering banking services to remitters, we provided a competitive environment, guaranteeing that people who need to send money to their relatives back home can do so affordably.

Presently we service more than 100 active corporate/MSB accounts (including but not limited to domestic and Internationally Headquartered Financial Institutions and Non-financial institutions such as Money Transmitters, Check Cashers, Bill Payers, Currency Exchange Dealers and other incorporated organizations or groups).

We have team of 10 members working directly with the remitters in a daily basis.

It is exciting to meet people from the many countries that remitters represent. We are very proud of the role we are playing in the growth of this industry. We feel a great deal of satisfaction when they compliment our excellent service.

Best of all, we are helping the many immigrants who use our remitters' services to send money home and support their families – the reason they came to America in the first place.







National Credit
Union Administration

Your savings federally insured to at least $250,000 and backed by the full faith and credit of the United States Government. National C
U.S. Government Agency.
© Bethex Federal Credit Union. All Rights Reserved. Bethex Federal Credit Union is an equal housing lende

Exhibit 2




Innovations in Personal Finance for the Unbanked: Emerging Practices from the Field

CASE STUDY

TRANSACTIONS AND BASIC BANKING



# Bethex Federal Credit Union and RiteCheck Partnership

**Synergy between check-cashing outlets and credit unions to help the unbanked**

In 2000, after three years of planning, Bethex Federal Credit Union and RiteCheck Financial Service Centers, a check-cashing outlet in New York, launched a partnership to expand their range of products and services. Bethex hoped to benefit from RiteCheck's expansive geographic network and retail infrastructure for broad distribution of its services to customers in the northern Manhattan and South Bronx sections of New York City. RiteCheck wanted to offer its customers the opportunity to tap into traditional banking products. The partnership helped these institutions offer a spectrum of transaction, deposit, and credit products that would not otherwise have been available.

The partnership also made it possible for Bethex members to make deposits at RiteCheck stores and for Bethex to market its products and services to RiteCheck's unbanked check-cashing customers, who could then get applications to open credit union accounts. In addition, RiteCheck provides Bethex customers with free check-cashing services on Bethex-issued checks (Bethex picks up the fee for these services) and reduced rates on non-Bethex checks. Meanwhile, RiteCheck benefits from the increased business brought in by Bethex customers and can in turn offer access to depository services, thus enhancing its image in the community. The partnership is now operating in eight check-cashing outlets, and plans are under way to include more credit unions and outlets.



| | |
|---|---|
| **Name and Location** | Bethex/RiteCheck Partnership, New York City |
| **Business Model** | Check-cashing depository |
| **Services Offered** | Standard check-cashing services and basic banking products |
| **Constituency Served** | 9,000 members of Bethex and 100,000 check-cashing customers in northern Manhattan and the South Bronx |
| **Success and Outcomes to Date** | ▿ Bethex products are now being offered in eight RiteCheck outlets. ▿ Since April 2002, when Bethex began keeping track, more than 60 new accounts have been established via the RiteCheck partnership. ▿ Bethex customers conduct, on average, 20 to 30 transactions and make about 10 deposits a month at RiteCheck outlets. |



TRANSACTIONS AND BASIC BANKING — Bethex Federal Credit Union and RiteCheck Partnership

The partnership did some groundbreaking work in getting all the necessary regulatory approvals. As a result, any organization hoping to replicate this model should have a much easier time getting such approvals.

Bethex/RiteCheck is an innovative business partnership that taps into the core business functions of both entities in a mutually beneficial manner. It combines the transactional model of a check-cashing outlet with a relationship-based credit union model in a way that maximizes the benefits for consumers, who get access to affordable prices and a broader set of financial services at convenient locations. Bethex gets access to 100,000 RiteCheck customers without the major costs of opening new branches; RiteCheck gets the extra business that Bethex customers bring in at minimal cost and gets to offer its customers a chance to start a depository and asset-building relationship. Everyone wins—the consumer, Bethex, and RiteCheck.



## History

Bethex is a federally chartered community development credit union that opened in 1970 under the leadership of Joy Cousminer, an adult education teacher, and her students, mainly working welfare mothers. It has grown from its original 600 members to nearly 11,000 and continues to add more than 1,000 new members a year. It has assets of almost $10 million and offers a full array of products (savings and checking accounts, ATMs, and small business loans). Bethex operates five full-time branches and an additional six "teller stations" that are open one or two days a week. It aims to minimize costs and pass the savings along to its members so that they can build assets and become financially stable. To lower costs, Bethex accepts donated equipment, relies on rent-free office space, and hires welfare-to-work participants. It also places heavy emphasis on finan-

> Bethex has grown from 600 members in 1970 to nearly 11,000 in 2002. It has almost $10 million in assets and five full-time branches.

cial education, including credit repair and budget counseling.

RiteCheck Check Cashing, Inc., a major check-cashing establishment with a long-standing presence in New York, has 11 stores in the Bronx and Manhattan and reaches 100,000 customers. The company offers a wide range of transaction and ancillary services, including check cashing, money orders, money wiring, bill and parking ticket payments, phone cards, Metro cards, photocopies/faxes, and ATMs. RiteCheck President Joe Coleman, former president of the Check Cashers Association of New York, is an advocate of check-cashing outlets as a means of offering appropriate services at a reasonable cost to low-income people who are not ready to open a bank account. He believes that in many situations, low-income people prefer the transactional approach of check cashing outlets to the relationship approach of banks.

In 2000, after three years of planning, Cousminer and Coleman launched the Bethex/RiteCheck partnership.



It started with two RiteCheck check-cashing outlets in the Bronx and is now operating at eight outlets (four in the Bronx and four in Harlem). Work is in progress to expand to a total of 14 outlets, including other company stores.

Bethex did not have enough branch locations to meet the needs of the low-income population in its trade area, but opening additional branches was too costly. It saw a partnership with RiteCheck as a way to make it easy for members to access services and reduce the cost of a branch office visit (transportation, logistical problems with child care, and driving time). Bethex also saw this as a way to increase its membership and offer savings and credit opportunities to a larger number of unbanked, low-income households. RiteCheck saw benefits in the increased transaction fees, the increased volume from other services that Bethex members might purchase, the increased access to banking services for its clients, and an enhanced image as a community partner.

> Both Bethex and RiteCheck perceived the benefits their customers could derive from their partnership.



## Business Model

### Program/Product Description and Outcomes

A unique feature of the partnership is the ability of Bethex members to access their credit union accounts for deposits, loan payments, and withdrawals through Point of Banking (POB) terminals at RiteCheck stores. They also can cash Bethex checks at no cost (Bethex pays the fees) and cash non-Bethex checks at a discount. Bethex can distribute information, as well as membership and loan applications, at RiteCheck stores.

The Bethex/RiteCheck business model takes advantage of banking technology found in New York. RiteCheck's acceptance of deposits from Bethex members is facilitated by POB terminals, which are just like ATMs and are located at teller windows. The transaction is conducted jointly by the customer and the teller: The customer specifies the transaction and the teller enters it into the POB, which routes the information via the phone line through the New York Cash Exchange (NYCE) network to the Bethex computer. (NYCE is similar to networks such as Cirrus, Star, Interlink, and so on, in other parts of the country.) Bethex sends a confirmation, and the POB prints a receipt. Customers find this very convenient, because they can deposit all or part of the check they cash into their account through the POB terminal and get a receipt and at the same time perform other transactions. Bethex reimburses its customers for the $1.50 charge to use the POB terminals. It also covers the check-cashing fee on Bethex-issued checks according to the rate structure used by members of Paynet, of which Bethex is a member. (Paynet is a cooperative network of check cashers and New York–area banks that allows check cashing establishments to cash payroll checks from some of the banks' large clients and collect the fees directly from the banks.) On non-Bethex checks, members pay a discounted rate of 1.1 percent, instead of the 1.4 percent maximum allowed under New York state law.

The program took three years to develop, primarily because of the need for various regulatory approvals and some operational and legal issues. While the partners did not engage in formal business planning, they were clear about the goals of their joint venture and created a pricing plan that would address the needs of both partners in a mutually beneficial way.

### Products/Services and Pricing

Bethex covers the fees on the checks it issues. Costs are assessed according to Paynet rates, which include



$4.50 for checks up to $600; $5.50 for checks from $600 to $1,000; and 1 percent of the face value for checks over $1,000. On withdrawals, Bethex pays a 38-cent interchange fee at the time of transaction and is billed monthly by RiteCheck for a $1.50 surcharge incurred under the NYCE network, which also defines deposit charges. RiteCheck gets 70 cents for a deposit, which costs Bethex around 90 cents.

### Pricing of Services at RiteCheck Stores for Bethex Members

| TYPE OF SERVICE | PRICE |
| --- | --- |
| Check cashing | Free on Bethex-issued checks; 1.1 percent on non-Bethex checks |
| Making deposits (cash or loan payment) | Free |
| Withdrawals | Free |
| Other RiteCheck services (money orders, lottery tickets, money wiring, paying bills and traffic citations) | Regular RiteCheck prices. Under Paynet, RiteCheck does not charge customers for payment of utility bills and traffic citations; it charges utility companies and the Department of Motor Vehicles directly. |

### Consumer Segment Served

Bethex now serves 11,000 customers, 60 percent of whom are senior citizens and recipients of welfare and supplemental security income benefits. The remaining 40 percent are mostly low-income employees of small companies that do not offer direct deposit or payroll deductions.

RiteCheck serves approximately 100,000 low- to moderate-income consumers of various ethnicities, including African Americans, Haitians, Asians, Russians, South Americans, and Mexicans.

### Technology

Technology plays a key role in this program. Essential to the partnership are the POB terminals that allow RiteCheck to accept deposits from Bethex members. The POBs look like ATMs. Customers swipe their cards and enter a personal identification number, and the network sees it as an ATM transaction. However, at a POB, a customer can also hand over cash or make a noncash deposit. And unlike an ATM, a POB transaction is handled by a cashier who can verify the funds that are deposited. It is worth noting that the NYCE regional network is the only one that accepts POB technology.

> The success of this partnership depends on two types of technology: POBs, which resemble ATMs in many ways, and Paynet, which is a form of cooperation between banks and check-cashing outlets.

The second important piece of technology is Paynet, which is a cooperative agreement between check-cashing establishments and New York banks. Under Paynet, the NYCE electronic banking network in New York allows outlets to cash payroll checks from some of the banks' large clients, permits banks to cash one another's checks for a fee, and accepts deposits for another institution for a fee. However, the check-cashing feature through Paynet appears to be unique to New York, and most New York banks seem to have chosen not to use other banks for placing deposits, although the practice is more widespread in New Jersey. Because Bethex belongs to Paynet, its customers can use other ATMs on this network for a fee.

### Location and Hours

RiteCheck has 11 stores, 7 in the Bronx and 4 in Manhattan. Stores are open from 7:30 a.m. to 6 p.m. on weekdays and from 8 a.m. to 1:50 p.m. on Saturdays. Bethex has five full-service branches: four



TRANSACTIONS AND BASIC BANKING

Bethex Federal Credit Union and RiteCheck Partnership

RiteCheck service menus are available in both English and Spanish, and tellers are usually fluent in the languages of their neighborhoods.

in the Bronx and one at Columbia University in Manhattan. In addition, it operates part-time teller windows in a church, a senior citizens center, an animal hospital, a theological seminary, and a community center.

## Education and Outreach

Bethex's basic outreach strategy is to have its staff stationed at a table in RiteCheck stores to offer check-cashing customers information about the credit union and to take applications. Bethex usually sets these tables up for several weeks at a time but also trains RiteCheck staff to answer questions so they can process requests for membership and selected services when there is no table. In addition, Bethex runs an informational video about its products at partnership stores, offers financial education to current members, and plans to make such training available to all new members. Credit and budget counseling support was recently added.



## Bottom Line

### Financial Costs and Profitability

Two years is not long enough to evaluate the cost and profitability of the partnership. It appears that RiteCheck has incurred limited costs for the program, including the cost of the POB technology and staff training (the company was investing in this technology anyway) and losses from bad checks. Such losses are likely to be low because many of the checks are issued by Bethex or drawn on Bethex members, whose records can be verified. RiteCheck also incurs

incremental costs from increased traffic, but these will be absorbed by existing staff.

Bethex, however, has substantial incremental per-transaction costs, which it will evaluate against the costs of establishing new branches. Since Bethex would be very unlikely to have the resources for a branch network as extensive as that of the RiteCheck partnership (Cousminer suggests that establishing a new branch costs about $400,000 and requires three full-time-equivalent staff), it is willing to incur substantial costs to support the partnership.

In addition, Bethex has staffing costs at some of the check-cashing outlets, where two employees enroll new members. To date, there also have been substantial costs in terms of the director's time and that of other staff. Additional time and accounting costs will be required to administer the new members, take care of the deposits, pay the fees, and so on. Further, every time someone at a RiteCheck outlet successfully fills out an application to become a Bethex member, RiteCheck gets $5.

Start-up costs for this program were low and consisted mainly of the time volunteered by Coleman and Cousminer. Bethex incurred legal fees of about $10,000 to address regulatory and legal issues. Since the investment was minimal, no projections were made, but the return on investment could be very high, especially for RiteCheck. For Bethex, however, the situation is not so clear. The credit union will be paying the costs for its members—costs that will have to be offset by new deposits that would not otherwise have been made.

Depending on the cash flow, subsidies could be needed, but this is unlikely except for special one-time needs, such as marketing. However, start-up funding and ongoing subsidies may be needed to replicate the program in other circumstances and should be considered by any potential sponsors.



TRANSACTIONS AND BASIC BANKING — Bethex Federal Credit Union and RiteCheck Partnership



## Evaluation

In New York, both check-cashing services and credit unions are regulated, so RiteCheck and Bethex had to obtain regulatory approval. RiteCheck asked the New York State Banking Department for approval for its stores to function as credit union branches. The department deferred the decision to the National Credit Union Administration (NCUA), the regulatory agency for credit unions, because it felt that the partnership presented liability issues for the credit union in that RiteCheck would be handling transactions for its members. NCUA asked Bethex for a legal opinion. In its submission, Bethex emphasized that all deposit transactions would take place over the NYCE electronic network and that therefore no greater risk would be involved. NCUA then determined that POB technology and network rules made further regulation unnecessary. This process took about a year to complete. As is often the case with groundbreaking activities, the first one is reviewed very carefully, and later, similar requests are addressed more quickly.

Replication already has begun. In April 2002, a similar relationship was started between the Actors Federal Credit Union and Manhattan MoneyBranch in New York. Principals from both established a joint industry committee to examine the issues involved in increasing the scale of their partnership efforts. The committee aims to develop a standard product offering and fee structure, which they believe are key to increasing the scale of these partnerships.

Other than regulatory oversight, no provisions were made for outside evaluation of the Bethex/RiteCheck partnership. However, recognizing the need to reach more people, the partners are trying to conduct a strategic analysis of the program to examine their competition, market environment, financial goals, and competition.

target markets, and growth projections, as well as the need for branding, trademarking, and logos.

The credit union does not have a tracking system in place to determine how, where, and why new members join, but at the end of April 2002, it estimated that about 60 people had joined because of this program.



## Major Findings

The Bethex/RiteCheck partnership is an innovative approach to meeting the financial needs of low-income and unbanked consumers. RiteCheck's extensive network of check-cashing establishments provides access to Bethex's low-cost, affordable consumer financial services. Major findings include the following:

> The Bethex/RiteCheck partnership has great potential to serve as a business model for other credit unions and check cashing establishments.

▽ *It is important to know your markets.* This partnership was founded by entrepreneurs who knew their customers and their markets, so they did not need much traditional business planning. They knew what they were going to run into and had a strong sense of what the results were likely to be.

▽ *Synergy between core business lines makes success more likely.* The Bethex/RiteCheck partnership has demonstrated that there is enough synergy in the core functions of a credit union and a check-cashing establishment to allow them to be packaged together to benefit both the partners and low-income, unbanked consumers.

TRANSACTIONS AND BASIC BANKING


Bethex Federal Credit Union
and RiteCheck Partnership

▽ *Baseline business planning is important in the long run.* While Bethex and RiteCheck did not create a formal business plan at the outset, they now realize that they need a strategic analysis to bring the partnership to scale. Replicating this model would require a baseline market analysis and profitability projections. Bethex/RiteCheck's analysis will help anyone planning to replicate the model, because there is a dearth of information in this area.

▽ *Technology is key to delivery of financial services.* This partnership would not have been possible without the POB technology that comes with the NYCE network and the Paynet collaborative structure between check-cashing establishments and area banks. Replication of this business model will depend heavily on the availability of these technologies in other locations.

▽ *Innovations require risk taking.* The partners took risks to improve the delivery of financial services to the unbanked. For Bethex, there is the possibility that it will not be able to break even. While the costs may not be great, Bethex was willing to assume small risks for the partnership to proceed, such as increased staffing costs that might result from handling transactions.

The Bethex/RiteCheck business model appears to be effective, especially where most of the members are low income and little net income is generated. Given its thin margins and small asset base, Bethex needed to come up with a low-cost way to reach more people and increase its asset size. The increased scale created through the RiteCheck partnership could result in improved net earnings and give the credit union some capital to create new programs and approaches.

---

Bethex Federal Credit Union/RiteCheck Partnership

Joy Cousminer
President/CEO, Bethex
20 E. 179th St., Lower Level
Bronx, NY 10453
718-299-3062
joy@bethexfcu.org

Joe Coleman
President, RiteCheck
715 E. 138th St.
Bronx, NY 10454
718-665-0770
jcoleman@ritecheck.com

*One of a series of case studies on personal financial services in distressed communities. Compiled by the Fannie Mae Foundation. The opinions expressed in these case studies are those of the financial organizations featured, and do not necessarily represent the views of Fannie Mae Foundation or its officers or directors.*


FannieMae
FOUNDATION

© 2003 Fannie Mae Foundation. All Rights Reserved.

Exhibit 3



**Bethex Federal Credit Union**
Main Branch ▪ 20 East 179th Street, Lower Level ▪ Bronx, NY 10453 ▪ Tel: (718) 975-2280 ▪ Fax: (718) 975-2277
www.bethexfcu.org

## CHECK CASHING
## ACCOUNT CONFIRMATION

June 10, 2013

Miguel A. Mota
Metropolitan Check Cashing Corp.
1264 Amsterdam Avenue
New York, NY 10027

Dear Miguel:

We are pleased to inform you that we have opened three new accounts as requested by you and Selene Munoz. The New ACH account number is 202424. This account is linked to your main account for internet access.

As your vendors may request, please use the following account information to process electronic transactions:

Financial Institution Name:   Bethex Federal Credit Union
Address:   20 East 179th Street, Lower Level
  Bronx, NY 10453
Routing Number:   226073895
Account Name:   Metropolitan Check Cashing Corp.
Labeled as :   ACH Account
Checking Account Number:   13580002024245

For internet account access, please visit our internet Teller web site at:
  https://www.bethexonline.org/

We are very excited about this new and direct relationship, and as such would like to thank you for your business.

Sincerely,

Greiny Nuñez
MSB Account Executive

3

Exhibit 4

```
                        BETHEX FEDERAL CREDIT UNION
                        20 EAST 179TH STREET, LL
                        BRONX NY  10453
                        (718)299-9100

MEMBER'S STATEMENT OF ACCOUNT                STATEMENT DATE: 11-30-2013
                                             STATEMENT PAGE #: 1


      METROPOLITAN CHECK CASHING CORP        ACCOUNT NO.:       202421
      1264 AMSTERDAM AVENUE
      NEW YORK, NY  10027


======================= S H A R E   A C C O U N T S =======================

----------------------------------------------------------------------------
SHARE ID NO: 74     TYPE: BUSINESS CHECKING
JOINT OWNER: MIGUEL MOTA                      FROM 11-01-2013 TO 11-30-2013
```

| DATE | TRANSACTION | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|-------------|--------|---------|
| | | PREVIOUS BALANCE: | | 1558.83 |
| 11-01 | WITHDRAWAL | eIT #202421 S-74 TO #202425 S-72 | -125.00 | 1433.83 |
| 11-01 | ACH DEPOSIT | EFT-WESTERN UNION/CKLESSPYMT | 567.00 | 2000.83 |
| 11-01 | ACH DEPOSIT | EFT-WorldPay/DEP TRF | 2020.00 | 4020.83 |
| 11-01 | WITHDRAWAL | OD XFER TO: 202424 S-75 | -27.74 | 3993.09 |
| 11-01 | WITHDRAWAL | OD XFER TO: 202424 S-75 | -263.00 | 3730.09 |
| 11-01 | WITHDRAWAL | OD XFER TO: 202424 S-75 | -2599.74 | 1130.35 |
| 11-01 | WITHDRAWAL | OD XFER TO: 202425 S-72 | -817.60 | 312.75 |
| 11-01 | SPECIAL COMMENT | ITEMS: 36  AMT: $17,907.20 | | |
| 11-01 | DEPOSIT | 36 ITEMS DEP.BATCH 10/31/13 | 17907.20 | 18219.95 |
| 11-01 | CASH WITHDRAWAL | CASH OUT | -16000.00 | 2219.95 |
| 11-01 | WITHDRAWAL | CASH PICK UP FEE | -125.00 | 2094.95 |
| 11-01 | DEPOSIT | POS-11/01-Castle Check P14-New York-NY | 9000.00 | 11094.95 |
| 11-01 | DEPOSIT | POS-11/01-Castle Check P14-New York-NY | 9000.00 | 20094.95 |
| 11-01 | DEPOSIT | POS-11/01-Castle Check P14-New York-NY | 9000.00 | 29094.95 |
| 11-01 | DEPOSIT | POS-11/01-Castle Check P14-New York-NY | 9000.00 | 38094.95 |
| 11-01 | WITHDRAWAL | xfer to acct #202424 | -27154.23 | 10940.72 |
| 11-01 | WITHDRAWAL | XFER TO ACCT #202424 | -9000.00 | 1940.72 |
| 11-01 | DEPOSIT | POS-11/01-Castle Check P14-New York-NY | 9000.00 | 10940.72 |
| 11-01 | WITHDRAWAL | XFER TO ACCT #202424 | -9000.00 | 1940.72 |
| 11-01 | DEPOSIT | XFER FROM-METROPOLITAN CHECK C | 182.46 | 2123.18 |
| 11-01 | WITHDRAWAL | BOUNCE CHECK #30222 AJD INC (MCDONALD) | -157.46 | 1965.72 |
| 11-01 | WITHDRAWAL | BOUNCE CHECK CHARGE | -25.00 | 1940.72 |
| 11-01 | WITHDRAWAL | LOAN PAYMENT LC-100 | -970.36 | 970.36 |
| 11-02 | DEPOSIT | eIT #202424 S-75 TO #202421 S-74 | 611.79 | 1582.15 |
| 11-02 | SPECIAL COMMENT | ITEMS: 73  AMT: $46,460.84 | | |
| 11-02 | DEPOSIT | 73 ITEMS DEP.BATCH 11/1/13 | 46460.84 | 48042.99 |
| 11-02 | WITHDRAWAL | 73 ITEMS DEP.FEE BATCH 11/1/13 | -15.33 | 48027.66 |
| 11-02 | SPECIAL COMMENT | ITEMS: 12  AMT: $3,784.78 | | |
| 11-02 | DEPOSIT | 12 ITEMS DEP. BATCH 11/2/13 | 3784.78 | 51812.44 |

```
page....                                          see next
```

METRO-0022

BETHEX FEDERAL CREDIT UNION
20 EAST 179TH STREET, LL
BRONX NY 10453
(718)299-9100

MEMBER'S STATEMENT OF ACCOUNT

STATEMENT DATE: 11-30-2013
STATEMENT PAGE #: 1

METROPOLITAN CHECK CASHING CORP
1264 AMSTERDAM AVENUE
NEW YORK, NY 10027

ACCOUNT NO.:      202424

========================= S H A R E   A C C O U N T S =========================
--------------------------------------------------------------------------------
SHARE ID NO: 75    TYPE: BUSINESS CHECKING
JOINT OWNER: MIGUEL MOTA

FROM 11-01-2013 TO 11-30-2013

| DATE | TRANSACTION | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|-------------|--------|---------|
| | | PREVIOUS BALANCE: | | 177.44 |
| 11-01 | ACH WITHDRAWAL | EFT-MONEYGRAM P SYS/MG SETTLE | -13.43 | 164.01 |
| 11-01 | DEPOSIT | OVERDRAFT PROTECTION XFER | 27.74 | 191.75 |
| 11-01 | ACH WITHDRAWAL | EFT-Amer. Pay. Sys./APS C & D | -41.75 | 150.00 |
| 11-01 | DEPOSIT | OVERDRAFT PROTECTION XFER | 263.00 | 413.00 |
| 11-01 | ACH WITHDRAWAL | EFT-NETSPEND/DINV103113 | -263.00 | 150.00 |
| 11-01 | DEPOSIT | OVERDRAFT PROTECTION XFER | 2599.74 | 2749.74 |
| 11-01 | ACH WITHDRAWAL | EFT-PAY-O-MATIC CORP/POM EPS | -2599.74 | 150.00 |
| 11-01 | FEE WITHDRAWAL | NSF FEE-$3242.14/EFT-PAY-O-MATIC CORP | -25.00 | 125.00 |
| 11-01 | FEE WITHDRAWAL | NSF FEE-$5092.75/EFT-WESTERN UNION | -25.00 | 100.00 |
| 11-01 | FEE WITHDRAWAL | NSF FEE-$5731.18/EFT-Amer. Pay. Sys. | -25.00 | 75.00 |
| 11-01 | FEE WITHDRAWAL | NSF FEE-$9899.31/EFT-WESTERN UNION | -25.00 | 50.00 |
| 11-01 | FEE WITHDRAWAL | NSF FEE-$12269.60/EFT-MoneyGram Paymen | -25.00 | 25.00 |
| 11-01 | DEPOSIT | XFER FROM-METROPOLITAN CHECK C | 27154.23 | 27179.23 |
| 11-01 | DEPOSIT | XFER FROM-METROPOLITAN CHECK C | 9000.00 | 36179.23 |
| 11-01 | DEPOSIT | CREDIT FOR 3 ITEMS | 75.00 | 36254.23 |
| 11-01 | WITHDRAWAL | EFT- MONEY GRAM PYMT | -12269.60 | 23984.63 |
| 11-01 | WITHDRAWAL | EFT -PAY O MATIC CORP | -3242.14 | 20742.49 |
| 11-01 | WITHDRAWAL | EFT- WESTERN UNION | -5092.75 | 15649.74 |
| 11-01 | DEPOSIT | XFER FROM-METROPOLITAN CHECK C | 9000.00 | 24649.74 |
| 11-01 | DEPOSIT | NSF CREDIT FOR 2 ITEMS | 50.00 | 24699.74 |
| 11-01 | WITHDRAWAL | EFT- AMER PAY SYS | -5731.18 | 18968.56 |
| 11-01 | WITHDRAWAL | EFT- WESTERN UNION | -9899.31 | 9069.25 |
| 11-01 | CASH WITHDRAWAL | CASH OUT | -8000.00 | 1069.25 |
| 11-01 | WITHDRAWAL | FEE FOR P/U CASH | -125.00 | 944.25 |
| 11-01 | WITHDRAWAL | XFER TO ACCT #202421 | -182.46 | 761.79 |
| 11-02 | WITHDRAWAL | eIT #202424 S-75 TO #202421 S-74 | -611.79 | 150.00 |
| 11-04 | ACH DEPOSIT | EFT-MONEYGRAM P SYS/MG SETTLE | 271.13 | 421.13 |
| 11-04 | DEPOSIT | OVERDRAFT PROTECTION XFER | 218.87 | 640.00 |
| 11-04 | ACH WITHDRAWAL | EFT-NETSPEND/DINV110113 | -490.00 | 150.00 |

page....

see next

METRO-0098

Exhibit 5

 

November 13, 2013

Mr. Miguel Mota
Ms. Selene Munoz
Metropolitan Check Cashing Corp.
1264 Amsterdam Avenue
New York, NY 10027

<u>Re:</u>  One-Day Lines of Credit

Dear Mr. Mota and Ms. Munoz:

This letter is to advise you that as of today, Bethex Federal Credit Union ("Bethex") has exercised its rights under the Federal Credit Union Act, 12 U.S.C. § 1757(11), the "Credit Line Account Advance Request and Security Agreement," and applicable state laws to offset the amounts due by Metropolitan Check Cashing Corporation ("Metropolitan") on defaulted one-day lines of credit, which currently total $ 256,024.16.

Bethex previously advised Metropolitan by letter dated August 28, 2013, that Metropolitan had defaulted on one-day lines of credit L-100, L-300, L-400 and L-500, and demanded payment of the outstanding balances within 30 days.  To date, Metropolitan has failed to pay off the balances on the lines of credit.  Contrary to statements contained in your letters of October 3 and November 12, 2013, Bethex never entered into any agreement with Metropolitan regarding an alternative payment arrangement.

Moreover, as you are aware, Bethex recently terminated its one-day line of credit program for all check cashers on November 8, 2013, at the direction of its regulators.  Accordingly, all outstanding balances on any one-day lines of credit were due in full as of November 12, 2013.  In light of the termination of this program, and Metropolitan's failure to pay off its balances, Bethex has properly exercised its rights to offset the amounts owed on the defaulted one-day lines of credit using any secured collateral held by Bethex and any funds contained in Metropolitan's accounts.

At this time Bethex has closed Metropolitan's accounts and will not be extending any one-day lines of credit.  Bethex is unable to consider doing future business with Metropolitan until it has paid off any remaining amounts it owes Bethex, and has deposited sufficient collateral to restore its secured lines of credit, as required by the New York Department of Financial Services.  Bethex reserves its right to take further legal action to recover any outstanding amounts owed by Metropolitan.

Sincerely,

*Joy Cousminer*

Joy Cousminer                              Fred Fernandez
President/CEO                              COO

Exhibit 6

**821454**          **2013 Dec 10 PM04:06**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Gisella Melendez 800-331-3282

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071, USA
efiling@wolterskluwer.com
(Fax)818-662-4141

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  Metropolitan Checks Cashing Corp. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS  1343 Ogden Avenue | CITY  Bronx | STATE NY | POSTAL CODE 10452 | COUNTRY USA |
|---|---|---|---|---|

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  Corporation | 1f. JURISDICTION OF ORGANIZATION  NY | |
|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME  Mota | FIRST NAME  Miguel | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS  7 Gladstone Court | CITY  Highland Hills | STATE NY | POSTAL CODE 10930 | COUNTRY USA |
|---|---|---|---|---|

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  MoneyGram Payment Systems Inc. | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS  1550 Utica Ave. South, Suite 100 | CITY  Minneapolis | STATE MN | POSTAL CODE 55416 | COUNTRY USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**
FURNITURE, FIXTURES, EQUIPMENT,INVENTORY, ACCOUNTS (INCLUDING DEPOSIT ACCOUNTS AND ACCOUNTS RECEIVABLE), INSURANCE, INSTRUMENTS AND DOCUMENTS, BOOKS AND RECORDS, CONTRACT RIGHTS AND GENERAL INTANGIBLES THAT TRUSTEE HAS OR MAY ACQUIRE AN INTEREST IN, AND ACCESSIONS AND PROCEEDS THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6.  This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA  NY-0-40962797-48021563

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201312106289657**

821454        2013 Dec 10 PM04:06

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

OR
| 9a. ORGANIZATION'S NAME Metropolitan Checks Cashing Corp. | | |
|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

OR
| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 11b. INDIVIDUAL'S LAST NAME Munoz | FIRST NAME Selene | MIDDLE NAME | | SUFFIX |
| 11c. MAILING ADDRESS 2475 Gunther Avenue | CITY Bronx | STATE NY | POSTAL CODE 10469 | COUNTRY USA |
| ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | | |

**12.** ☐ **ADDITIONAL SECURED PARTY'S** or ☐ **ASSIGNOR S/P'S NAME** - insert only one name (12a or 12b)

OR
| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

WESTERN UNION FINANCIAL SERVICES, INC.,

                    Plaintiff,

    -against-

METROPOLITAN CHECK CASHING, INC., BETHEX FEDERAL CREDIT UNION,
MIHUEL MOTA and SELENE MUNOZ,,

## AFFIDAVIT AND AFFIRMATION IN OPPOSITION

### VENERUSO, CURTO, SCHWARTZ & CURTO, LLP

*Attorney(s) for*          **Defendants Metropolitan Check Cashing, Inc., Miguel Mota and Selene
Munoz**
35 EAST GRASSY SPRAIN ROAD
SUITE 400
YONKERS, NEW YORK 10710
(914) 779-1100

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed
document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not
obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are
not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:*..........................................      Signature .....................................................................................

                                        Print Signer's Name...............**Joseph R. Curto**

*Service of a copy of the within*                                        *is hereby admitted.*

*Dated:*

                    ...............................................................................................
                                        *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐  *that the within is a (certified) true copy of a*
NOTICE OF  *entered in the office of the clerk of the within-named Court on*                    20
ENTRY

☐  *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF  *Hon.*                                        *, one of the judges of the within-named Court,*
SETTLEMENT  *at*
         *on*                    20       *, at*              *M.*

*Dated:*

                    VENERUSO, CURTO, SCHWARTZ & CURTO, LLP
              *Attorney(s) for*

*To:*                              35 EAST GRASSY SPRAIN ROAD
                                  SUITE 400
                              YONKERS, NEW YORK 10710

*Attorney(s) for*

# EXHIBIT "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------X
WESTERN UNION FINANCIAL SERVICES, INC.,

                              Plaintiff,

    -against-                                          INDEX NO.300710/14

METROPOLITAN CHECK CASHING, INC.,
BETHEX FEDERAL CREDIT UNION,                           AFFIRMATION IN
MIGUEL MOTA and SELENE MUNOZ,                          OPPOSITION TO
                                                       MOTION TO DISMISS

                              Defendants.
-----------------------------------------------------------------X,

        David J. Finkler, Esq., an attorney at law duly licensed to practice before the Courts of
the State of New York, affirms under penalty of perjury, as follows:

    1.  I am legal counsel to Plaintiff Western Union Financial Services, Inc. (hereinafter
    "Western Union") and, as, such am fully familiar with the matter before the Court due to
    my review of the records of my client, discussions with the same and my representation to
    date.

    2.  Defendant Bethex Federal Credit Union (hereinafter "Bethex") has filed a PRE-
    ANSWER motion to dismiss which should be denied by the Court.

    3.  Defendant Bethex provides in support a sworn affidavit by its COO Fredery Fernandez
    which states in paragraph "1" that he is personally familiar with the "Money Service
    Business" and the "remittance program" of Defendant Metropolitan Check Cashing,
    Inc.as a money transmitter.

    4.  In his capacity as a COO, Mr.Fernandez further represents that he is personally
    familiar with the ACH debit account set up for Defendant Metropolitan which allows
    third-parties to remove funds from a designated bank account of Bethex's customer
    Metropolitan.

5. Annexed to and made a part of the Plaintiff's Verified complaint as an exhibit is the Western Union North America Agency Agreement. Within that document is another document entitled: **"Draft ACH Authorization Agreement (Trust Fund Account)"**. Annexed hereto as Exhibit "A" is a copy of the document contained in the Agent Agreement.

6. Based upon the representations of Mr. Fernandez a fact question arises as to whether or not he or the Bank was aware (or should have made itself aware) of the trust relationship involving the very funds to be deposited into the ACH debit account.

7. It has not been disputed in this motion that the Western Union North America Agency Agreement created a trust relationship between Plaintiff and Defendant Metropolitan.

8. Consequently, an important issue of fact to be resolved through discovery, based upon the foregoing documents and the affidavit of Mr. Fernandez, exists as to whether Bethex was aware, should have been aware, or was made aware by Defendant Metropolitan, of the trust fund obligations under the Western Union North America Agency Agreement.

9. It is also a legitimate factual question, that cannot be resolved without depositions and written disclosure, what exactly Mr. Fernandez and Bethex expected and/or understood with regard to how the Metropolitan money transfer and money order business operated and whose money was being transferred as part of the money transmission business.

10. New York Banking law §641 states in pertinent part:

> **No person shall engage in the business of selling or issuing checks, or engage in the business of receiving money for transmission or transmitting the same, without a license therefor obtained from the superintendent as provided in this article, nor shall any person engage in such business as an agent, except as an agent of a licensee or as agent of a payee...**

11.  Given the law and the fact that Bethex was aware that Metropolitan was engaged in the money transfer business, as apparently were other Bethex customers, another issue of fact exists whether and to what extent Bethex inquired of Defendant Metropolitan about the money transfer business it was doing and to what extent disclosures were made which will prove that Defendant Bethex was aware that it was holding money transfer trust funds as part of the funds received into Defendant Metropolitan's bank accounts.

12.  Moreover, New York Banking law §651-a, which applies to a Federal Credit Union, states as follows:

Remittances. Each agent of a licensee which sells any New York instruments or New York traveler's checks issued by such licensee shall, and each licensee shall so require each of its agents which sells any New York instruments or New York traveler's checks issued by such licensee to report such sale and remit the face amount of New York instruments and New York traveler's checks to such licensee within such period of time as the licensee requires within the normal course of its business or as the superintendent, by rule or regulation, may prescribe. For purposes of this section, remittance shall include either direct payment of such funds to the licensee or the deposit of such funds in a banking organization, national bank, federal savings bank, federal savings and loan association, federal credit union, or a banking institution chartered under the laws of another state or country, in an account in the name of such licensee specifically established for the purpose of receiving such funds. Remittance by such agent to such licensee or deposit by such agent in such account or its equivalent of funds in advance of the sale of such New York instruments and New York traveler's checks, in an amount not less than the amount said agent would normally receive from such sales of New York instruments and New York traveler's checks, shall be deemed compliance with the provisions of this section. (emphasis added)

13. This section of the law, of which it is presumed the Defendant Bethex was aware, ensures that Defendant Metropolitan makes remittances of consumer money transfer and money order funds to its Principal and specifically equates "remittance" of the funds by the agent with the "deposit" of the money transfer trust funds into a bank account under the control of, among others, a "federal credit union".

14. As such, another factual question arises regarding the extent Defendant Bethex was familiar with the Banking laws of the State of New York and what did it do to insure that the funds remitted by Metropolitan reached Western Union.

15. Another question exists as to what Defendant Bethex knew about the specific purpose for opening each separate bank account by Metropolitan in the furtherance of its money remittance business. See, Exhibit "A" annexed to the moving papers attaching copies of the "Main Account", "ACH Account" , "Corporate Checking Account" and "Check Cashing Account" documents.

16. It would be out of the ordinary for a bank to open so many different accounts and not be aware of what business the customer intended to use each account for.

17. Defendant Bethex admits in its moving papers that it was aware that Defendant Metropolitan was remitting funds to Western Union by way of the ACH debit account. See, affidavit of Mr. Fernandez at paragraph "7".

18. Most people on the street are familiar with the fact that money transfers and money order involve consumers sending their funds to relatives, friends, etc., consequently it is a question of fact as to whether Defendant Bethex also understood the business and, if so, inquired of its customer, Metropolitan, whether the funds to be set-off were money transfer or money order trust funds.

19. The black letter law of the State of New York with regard to PRE-ANSWER motions for summary judgment is that:

(a)  the Court must accept the allegations of the complaint as true and accord the plaintiff the benefit of <u>every</u> possible inference.  See, <u>Leon v. Martinez</u>, 84 NY2d. 83, 87 (1994); (emphasis added); and

(b)  the Court must then determine whether the facts as alleged by the plaintiff fit within <u>any</u> theory cognizable at law.  See, <u>Goldman v. Metropolitan Life</u>, 5 NY3d. 561, 570-571 (2005).

20.  In reviewing the subject motion the Courts of this State have determined that "the Court is to focus on whether the pleader has a cause of action rather than on merely whether he has properly stated one."  See, <u>Leon v. Martinez,</u> 84 N.Y.2d. at 88 supra.

21.  "[U]nless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate."  See, <u>Guggenheimer  v. Ginzburg</u>, 43 NY2d. 268, 275 (1977).

22.  The Defendant Bethex's entire motion is premised upon the <u>claim</u> that it was not aware that the funds in the Defendant Metropolitan's bank account were trust funds belonging to Western Union.

23.  In this respect the subject motion to dismiss is completely conclusory as neither Mr. Fernandez nor anyone else from the Bank has been subjected to the discovery process warranting denial of the motion.

24.  Upon that  fact, at this juncture, it would be prejudicial to dismiss the Western Union complaint based upon a one-sided presentation with exhibits that do not satisfy the ultimate questions of law raised by the verified complaint.

25.  This proof is lacking the requisite reliability upon which to base the subject PRE-ANSWER motion to dismiss.

26.  At a minimum the issue of notice of the existence of trust funds in the possession and control of Defendant Bethex is left unresolved due to the sworn allegations of the Defendant Metropolitan in its cross-claims which read absolutely contrary to the lack of notice assertions by Defendant Bethex where the Metropolitan Verified Answer reads:

> **7.  In said banking relationships, Bethex was aware or should have been aware of the type of sales and lines of business which Met was engaged in.**

> **8.  Specifically, Bethex knew or should have known that funds deposited by Met into its bank account at Bethex, including trust funds received by Met from sales to Met's customers of money transfers and money order business services.  In fact, Bethex had previously sent to plaintiff by automated deduction, from Met's bank these trust funds.**

> **9.  On or about November 2013 Bethex converted monies in Met's bank account which it knew or should have known were trust funds not belonging to Met, to pay down its loan agreements for debt alleged due from Met to Bethex.**

Annexed hereto as Exhibit "B" is the Verified Answer filed by Defendant Metropolitan in this case.

27.  Thus, the documentary evidence submitted by the movant does not "authoritatively" contradict some crucial allegations of the complaint or resolve all factual issues, warranting denial of the motion. See, <u>Goshen v. Mutual Life</u>, 98 NY2d 314, 326 (2002).

28.  The Court of Appeals has held that: **[a]ffidavits submitted by the defendant/respondent will almost never warrant dismissal under CPLR 3211 unless they "establish conclusively that [petitioner] has no [claim or] cause of action."**

Lawrence v. Miller 11 NY3d 588 (2008) citing Rovello v. Orofino Realty Co., 40 NY2d 633, 636 (1976).

29.  The exhibits filed by Defendant Bethex establish no more than that Metropolitan was a multiple account holder at the bank.  The documents do not address nor satisfy conclusively the only question before this court : whether in the four corners of the complaint the Plaintiff has pled valid causes of action against Bethex.

30.  It is submitted, that these documents and the affidavit of Mr. Fernandez do not reach the ultimate issue of whether a duty was imposed by law on the bank to inquire about the source of the funds it was taking by set-off  and whether doing so without inquiry was unlawful.

31.  The Appellate Division, First Department, in the case of Daly v. Atlantic Bank, 201 AD2d. 128, 614 NYS2d 418 (1st Dept. 1994) holds that a Bank may be liable  where it is on notice that funds in its possession or control belong to a third-party:

> However, when a bank is on notice that funds in a depositor's
> account are owned by a third-party, the bank cannot appropriate
> those funds in order to set them off against a debt of the depositor.

32.  The Daly Court went further at page 130 concluding that actual knowledge is not the test, rather:

> A bank will be considered to have such notice when it is aware
> of facts which would fairly provoke it to inquire as to the true
> ownership of the funds and such inquiry, if made with ordinary
> diligence would reveal the true ownership...

33.  The case aforementioned undeniably establishes that there is a valid issue of fact whether Defendant Bethex owed a duty to Western Union based upon its actual

knowledge and/or its duty to inquire whether its customer Metropolitan was in possession of money transfer and/or money order trust funds belonging to Western Union before acting on a set-off.  (See also, Exhibit "B" annexed hereto).

34.  In addition, the Court is respectfully referred to the case of Century Indemnity v., Bank of Gowanda, 35 NYS2d. 396 affd 263 AD 1068 (1941) where the Court found that where a bank had knowledge of the source of funds it also knew the customer was acting in a fiduciary capacity and therefore had no right to offset.  The Court held:

> **Trust funds do not lose their character as such by being deposited in a bank for the individual credit and account of the person who is Trustee. Bischoff v. Yorkville Bank, 218 N.Y. 106-111...**

35.  Finally, in Grace v. Corn Exchange, 287 N.Y. 94, 100 (1941) the Court of Appeals held on the issue of the right of a third-party to its funds taken by a bank

> **If a bank wrongfully appropriates to its own use moneys deposited with it, it is of course liable for the money it has converted, as any other wrongdoer would be liable for damages caused by his wrong.**

36.  Based upon this line of cases, if the allegations of the complaint are deemed true for purposes of this motion then Western Union has set forth valid claims for an accounting, negligence, bailment, conversion, unjust enrichment, tortious interference with contractual relations, tortious interference with business relations, money had and received and bad faith.

37.  As the Court of Appeals sanctioned in Arrington  v. New York Times, 55 NY2d 433, 442 (1982), based upon the foregoing, Western Union will rest upon the allegations made

in the complaint and leave for the Court to decide if "within the four corners of the complaint, the complaint sets forth the elements of a viable cause of action."

WHEREFORE, it is respectfully requested that the Court deny the Defendant Bethex's motion to dismiss, along with such other and further relief as to the court seems just and proper.

Dated: June 13, 2014

David J. Finkler, Esq. (2113231)
Law Offices of David J. Finkler, P.C.
Attorney for Plaintiff
266 Harristown Road, Suite 203
Glen Rock, N.J. 07452
(201) 689-0001

<u>AFFIRMATION OF SERVICE</u>

On June 16, 2014 the Plaintiff through, the undersigned, filed a copy of the foregoing Affirmation in Opposition to Motion to Dismiss and Exhibits with the Court.
On the same date a copy of the within papers were e-mailed and mailed by regular mail, first class delivery, postage prepaid,  to the following counsel of record:

1.      Strook Strook & Lavan LLP
        180 Maiden Lane
        New York, N.Y. 10038
        Attn:  Allyson M. Rucinski, Esq.  arucinski@strook.com
        Attorneys for Defendant Bethex Federal Credit Union

2.      Veneruso, Curto, Schwartz & Curto LLP
        35 Grassy Sprain Road, Suite 400
        Yonkers, N.Y.  10710
        Attn:  Joeseph R. Curto, Esq.  jcurto@vcsclaw.com
        Attorneys for Defendants Metropolitan Check and Munoz

I affirm under penalty of perjury that the foregoing statements by me are true to the best of my knowledge.

Dated: June 16, 2014

_____
David J. Finkler, Esq.

EXHIBIT "A"

## ACH DRAFT AUTHORIZATION AGREEMENT
### (Trust Fund Account)

1. The undersigned Agent authorizes Western Union Financial Services, Inc. ("Western Union") to initiate debit and credit entries (via automated clearing house or other electronic means) to or from the Trust Account specified below (or any replacement accounts specified by Agent in a Western Union Bank Change Form and approved by Western Union)(individually, an "Account" and collectively the "Accounts")) in accordance with this Authorization and the applicable rules of the National Automated Clearing House Association and its related member associations ("ACH Rules") for the purpose of obtaining from Agent amounts payable to Western Union, including but not limited to money transfer trust funds.

2. Agent represents and warrants that (i) if Agent is a natural person, the Accounts are and will be maintained primarily for commercial purposes and not personal, family or household purposes; and (ii) the signature(s) below are all the signature(s) necessary to make these Authorizations effective as to debit and credit entries to the Accounts. Western Union shall not be liable for any act or omission of any automated clearing house, depository, or other person, including the originating depository financial institution(s). Agent will indemnify and hold harmless Western Union for any and all claims, demands, losses, liabilities or expense, including attorneys' fees and expenses, directly or indirectly resulting or arising out of the breach or inaccuracy of these warranties and representations.

3. Agent hereby agrees to be bound by the ACH Rules in effect from time to time. Agent further agrees to complete and execute any and all additional documents that the bank(s) maintaining the Accounts may require to effectuate and maintain this authorization. These authorizations shall remain in full force and effect until Western Union and the bank have received at least sixty (60) days prior written notification from Agent of either or both of their termination. Agent further agrees not to terminate these authorizations until alternative payment arrangements acceptable to Western Union, in its sole discretion, have been made with another bank or banks.

**TRUST ACCOUNT AUTHORIZATION.** This Trust Account Authorization, including the terms set forth in Sections 1 through 3 above, contains the entire agreement of the parties with respect to the Trust Account subject matter herein. This Trust Account Authorization may be amended only by a writing signed by both parties.

For: ☑ Money Transfer, ☑ Money Order and ☐ Convenience Pay   (CHECK ALL THAT APPLY)

| AGENT/BUSINESS NAME *(please print)* | | AGENT ID NUMBER *(if assigned)* |
|---|---|---|
| Metropolitan Check Cashing | | ANY019925 |
| NAME EXACTLY AS IT APPEARS ON THE ACCOUNT | | |
| Metropolitan Check Cashing Corp. | | |
| BANK NAME | BRANCH | CITY, STATE, ZIP CODE |
| Bethex Federal Credit Union | | Bronx, NY 10453 |
| BANK ACCOUNT NUMBER | TRANSIT/ABA NUMBER | |
| 135 8000 202 4245 | 226 073 895 | |
| SIGNATURE | | DATE |
| | | 6/14/13 |
| NAME AND TITLE *(please print)* | | |
| Miguel Mota   President | | |

PLEASE ATTACH VOIDED CHECKS FOR ACCOUNT LISTED

G:\FDCDOC\AG\FSWU-REFWUNA\Forms\Form\9999 Forms US\ACH Authorization -- TRUST (3/00).doc

EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------------------x
WESTERN UNION FINANCIAL SERVICES, INC.,                    Index No.: 300710-14

                                       Plaintiff,                          VERIFIED ANSWER

-against-

METROPOLITAN CHECK CASHING, INC., BETHEX
FEDERAL CREDIT UNION, MIHUEL MOTA and
SELENE MUNOZ,

                                       Defendants.
-------------------------------------------------------------------------x

        Defendants' Metropolitan Check Cashing, Inc., Miguel Mota s/h/a Mihuel
Mota and Selene Munoz ("Defendants") as and for their verified answer to
plaintiff's verified complaint alleges the following:

        1.      Denies each and every allegation set forth in paragraph numbers
"16", "17", "19", "20", "24", "25", "26", "28", "29", "30", "32", "33", "36", "37",
"38", "39", "41", "45", "99" and "100" of plaintiff's complaint.

        2.      Denies knowledge and information sufficient to form a belief as to
each and every allegation set forth in paragraph numbers "3", "18", "42", "44" and
"98" of plaintiff's complaint.

        3.      Repeats and realleges each and every denial in answer to each and
every allegation set forth in paragraph numbers "14", "21", "27", "31" "34", "40"
and "94" of plaintiff's complaint.

        4.      Each and every allegation set forth in paragraph numbers "46"
through "93" are alleged causes of action not against the Defendants.  The
Defendants do not admit or deny those allegations.

1

## FIRST AFFIRMATIVE DEFENSE

5.     The amount alleged owed $211,374.98 is subject to a set off for monies received and not properly credited to Defendants' account for the periods at issue in this action.

## FIRST CROSS-CLAIM AGAINST BETHEX FEDERAL CREDIT UNION

6.     Defendant, Metropolitan Check Cashing, Inc. ("Met") and Bethex Federal Credit Union ("Bethex") entered into loan agreements whereby Bethex provided to Met a credit facility as required by the New York State Department of Finance and a revolving line of credit.  Bethex also maintained Met's business bank account.

7.     In that said banking relationship, Bethex was aware or should have been aware of the type of sales and lines of business which Met was engaged in.

8.     Specifically, Bethex knew or should have known that funds deposited by Met into its bank account at Bethex, including trust funds received by Met from sales to Met's customers of money transfers and money order business services.  In fact, Bethex had previously sent to plaintiff by automated deduction, from Met's bank these trust funds.

9.     On or about November 2013 Bethex converted monies in Met's bank account which it knew or should have known were trust funds not belonging to Met, to pay down its loan agreements for debt alleged due from Met to Bethex.

10.    Based upon this conversion of funds Met must have judgment against Bethex for the amount of the trust funds which Bethex converted.

## SECOND CROSS-MOTION AGAINST BETHEX FEDERAL CREDIT UNION

11.    Defendants' repeat and reallege each and every allegation set forth in paragraphs "6" through "10 herein.

12.     Bethex, due to its actions is required to indemnify Defendants for any loss Defendants may sustain due to Bethex's conversion of trust funds.

WHEREFORE, Defendants demand judgment dismissing plaintiff's complaint against Defendants and granting judgment against Bethex on Defendants' First and Second Counterclaims in an amount to be determined by this Court along with the costs and disbursements of this action.

Dated:  Yonkers, New York
        March 31, 2014

Yours, etc.,
VENERUSO, CURTO, SCHWARTZ & CURTO, LLP

By: _____
        Joseph R. Curto, Esq.
        Attorney for Defendants Metropolitan Check
        Cashing, Inc., Miguel Mota and Selene Munoz
        35 East Grassy Sprain Road, Suite 400
        Yonkers, New York 10710
        (914) 779-1100

To:     David J. Finkler, P.C.
        Attorney for Plaintiff
        266 Harristown Road, Suite 203
        Glen Rock, N.J. 074 52
        (201) 689-0001

        Bethex Federal Credit Union
        20 E. 179th Street
        Bronx, New York 10453

3

STATE OF NEW YORK      )
                       ) ss.
COUNTY OF WESTCHESTER  )

## VERIFICATION

I, Miguel Mota, the undersigned, being duly sworn, deposes and says that I am the defendant in this action and I have read the foregoing Verified Answer and know the contents thereof; the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
Miguel Mota, Individually

_____
Miguel Mota, as President

Sworn to before me on the
31st day of March, 2014

_____
NOTARY PUBLIC

JOSEPH R. CURTO
Notary Public, State of New York
No. 4784139
Qualified in Westchester County
Commission Expires May 31, 20__

STATE OF NEW YORK                    )
                                     ) ss.
COUNTY OF WESTCHESTER    )

<u>VERIFICATION</u>

I, Selene Munoz, the undersigned, being duly sworn, deposes and says that I

am the defendant in this action and I have read the foregoing Verified Answer and

know the contents thereof; the same is true to my own knowledge, except as to those

matters therein stated to be alleged upon information and belief, and as to those

matters I believe them to be true.

_____
Selene Munoz, Individually

Sworn to before me on the
31st day of March, 2014

NOTARY PUBLIC

JOSEPH R. CURTO
Notary Public, State of New York
No. 4X84139
Qualified in Westchester County
Commission Expires May 31, 20__

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

WESTERN UNION FINANCIAL SERVICES, INC.,

                                    Plaintiff,

        -against-

METROPOLITAN CHECK CASHING, INC., BETHEX FEDERAL CREDIT UNION,
MIHUEL MOTA and SELENE MUNOZ,,

## VERIFIED ANSWER

### VENERUSO, CURTO, SCHWARTZ & CURTO, LLP

*Attorney(s) for*   **Defendants Metropolitan Check Cashing, Inc., Miguel Mota and Selene
                    Munoz**
                    35 EAST GRASSY SPRAIN ROAD
                    SUITE 400
                    YONKERS, NEW YORK 10710
                    (914) 779-1100

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed
document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not
obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are
not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:*.........................................   Signature .........................................

                                        Print Signer's Name........... **Joseph R. Curto**

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*

                            .........................................
                                *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐   *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within-named Court on*                    *2(*
ENTRY

☐   *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*                                  *, one of the judges of the within-named Court,*
SETTLEMENT   *at*
        *on*               *20*        *, at*          *M.*

*Dated:*

                        VENERUSO, CURTO, SCHWARTZ & CURTO, LLP
                *Attorney(s) for*

                                35 EAST GRASSY SPRAIN ROAD
*To:*                                   SUITE 400
                                YONKERS, NEW YORK 10710

*Attorney(s) for*

## ATTORNEY'S CERTIFICATION

STATE OF NEW YORK, COUNTY OF

The undersigned, an attorney admitted to practice in the State of New York, does hereby certify, pursuant to Section 2105 CPLR, that I have compared the within with the original and have found it to be a true and complete copy thereof.

Dated:                    2000

Type or Print Name Below Signature

Sir(s):

PLEASE TAKE NOTICE that a form of judgment of which the within is a (true) (certified) copy

__NOTICE OF ENTRY OR SETTLEMENT__
(Check and complete appropriate box and section)

___ NOTICE OF ENTRY
Was entered on

was duly entered in the within named court
on _____ 2000)

___ NOTICE OF SETTLEMENT
will be presented for settlement to the Hon.
one of the judges of the within named court at the Supreme Courthouse at

on

at      9:30      o'clock                    AM.

Dated:

Yours, etc.

**LAW OFFICES OF DAVID J. FINKLER, P.C.**
Attorney(s) for      *PLAINTIFF*
9 EAS T 3 8TH STREET
NEW YORK, NY 10016

---

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

WESTERN UNION FINANCIAL SERVICES, INC.,

Plaintiffs,

-against-

METROPOLITAN CHECK CASHING, INC., BETHEX FEDERAL CREDIT UNION, MIGUEL MOTA and SELENE MUNOZ,

Defendant.

**AFFIRMATION IN OPPOSITION TO MOTION TO DISMISS, AFFIRMATION OF SERVICE AND EXHIBITS**

Attorney(s)  *PLAINTIFF*

**LAW OFFICES OF DAVID J. FINKLER, P.C.**

C/o CUOMO, LLC                    NEW JERSEY OFFICE
9 EAST 38TH STREET              266 HARRISTOWN RD. STE. 203
NEW YORK, N.Y. 10016            GLEN ROCK, NJ 07452

**(212) 675-3520**                    **FAX: (212) 448-9943**

The undersigned attorney certifies pursuant to 22 NYCRR 130-1.1 that to the best of his/her knowledge, information and belief the annexed document is not frivolous.



David J. Finkler, Esq.

---

STATE OF NEW YORK
COUNTY OF BRONX

within

at                    o'clock

on                    2000

at                    2000 M.

Attorney(s) for

by:
__AFFIDAVIT OF SERVICE BY MAIL__

STATE OF NEW JERSEY
COUNTY OF BERGEN    : ss.:

I Veronica Guevara  being sworn, says:
I am not a party to this action; I am over 18 years of age;
I reside at Paterson, N.J.
On _____ served a copy of the within  the address designated by said attorney(s) for that purpose by depositing a true copy of the same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service by regular mail with certificate of mailing.

Sworn to before me

This      day., 2014

Type or Print Name Below Signature:
Veronica Guevara